# O'DONNELL v. KANSAS CITY, St. LOUIS & CHICAGO RAILROAD COMPANY, Appellant.

Division One, June 19, 1906.

1. **PASSENGER: Relation How Established.** The relation of carrier and passenger arises out of contract; not necessarily an express contract, for it may be implied, but it is based on a contract of the one kind or the other. And it must be a contract between the individual and the carrier, not between the individual and the carrier's servant. The corporation can contract only through its agents, but still the contract must be the company's and not the agent's. And if there was no contract between the company and the individual, the individual was not a passenger, although he may have been on the train in pursuance to an agreement between him and the brakeman, with the conductor's knowledge and consent.

2. ———: ———: **Working for Fare.** The plaintiff and a companion approached the brakeman and asked him to let them ride on his freight train. He agreed to do so on condition that they would help unload freight along the route, which they agreed to do and did, and the conductor stood by and saw them at work, and directed plaintiff where to put freight. They rode on freight cars, and not in the caboose, and seemed to avoid being seen by the conductor. *Held*, that plaintiff was not a passenger, and that the conductor's testimony that he did not know that they were on the train is proper in considering whether they were received on the train as passengers.

3. ———: ———: **Knowledge of Agent's Authority.** Any mature man is presumed to know that a brakeman or locomotive engineer of a freight train has no authority to make a contract on behalf of the railroad company for carrying passengers, that to make an agreement to carry him if he will help with the freight is not within the scope of the authority of either, and that such a contract is not made with an honest purpose and is not binding on the company.

4. ———: ———: **Meritorious License.** The giving of a small sum to a brakeman on a freight train to induce him to permit the giver to ride on his train, for the brakeman's benefit and in known violation of the rights of the company, is a fraud, a species of bribery, and does not entitle the giver, if injured while being so carried, to plead that thereby a contract arose which created him either a passenger or a meritorious licensee of the company.

O'Donnell v. Railroad.

5. ———: ———: Implication: Tacit Agreement. The law will not imply a tacit agreement on the part of a conductor of a freight train to constitute one on the train a passenger, in the absence of any circumstances either that he considered himself a passenger or that the conductor so considered him; it will not imply such a tacit agreement from the fact that the conductor saw him on the top of a freight car, where no passenger has a right to be, there being a caboose on the train for passengers— especially where his conduct was that of a man trying to avoid being seen by the conductor, and if seen it was by accident.

6. NEGLIGENCE: Licensee: Trespasser: Care Required. Every one knows he has no right to' ride on a train, freight or passenger, without paying fare, and if one pays the brakeman a little money to let him ride, and by that means is received on the train, he is not a licensee, but a treaspasser, and the railroad company owes him no duty except not to injure him if, by the exercise of ordinary care after his peril is discovered, the injury can be avoided.

Appeal from Jackson Circuit Court.—*Hon. W. B. Teasdale,* Judge.

REVERSED.

*Scarritt, Griffith & Jones* for appellant.

The peremptory instructions for defendant should have been given.    Snyder v. Railroad, 60 Mo. 413; Stringer v. Railroad, 96 Mo. 299.    It is the settled law everywhere that where a party knowingly connives with the trainmen to secure a free ride, and thus intentionally defrauds the railway company of its customary charges, such person acquires none of the rights of a passenger, but is a trespasser, or at best, a bare licensee, to whom no duty is owed except to refrain from willful or intentional injury.    Berry v. Railroad, 124 Mo. 223; McVeety v. Railroad, 45 Minn. 268; Powers v. Railroad, 153 Mass. 188; Railroad v. Roach, 83 Va. 375; Railroad v. Brooks, 81 Ill. 245; McCauley v. Railroad, 93 Ala. 356; Eaton v. Railroad, 57 N. Y. 382; Railroad v. Black, 87 Tex. 160; 3 Thompson on Negligence, secs. 3320, 3321; 2 Woods, Ry. Law, pp. 1044, 1045; Beach on Contrib. Neg. (2 Ed.), sec. 165.

*C. F. Mead* and *L. W. McCandless* for respondent.

(1) The plaintiff was a passenger. Buck v. Railroad, 46 Mo. App. 563; Sherman v. Railroad, 72 Mo. 64; Whitehead v. Railroad, 99 Mo. 269; Muehlhauser v. Railroad, 91 Mo. 344; Wilton v. Railroad, 107 Mass. 108; Railroad v. Yarborough, 83 Ala. 241; Gradin v. Railroad, 30 Minn. 217. (2) The conductor running a train is the company. Randolph v. Railroad, 18 Mo. App. 609; McGinnis v. Railroad, 21 Mo. App. 399. (3) Even if plaintiff was a licensee or trespasser the defendant owed him the duty of exercising ordinary care to prevent injuring him if his presence upon the train was known to the conductor. Fiedler v. Railroad, 107 Mo. 651; Morgan v. Railroad, 159 Mo. 274; Klockenbrink v. Railroad, 172 Mo. 687; Jett v. Railroad, 178 Mo. 672; Sculling v. Railroad, 184 Mo. 707; Reyburn v. Railroad, 187 Mo. 573; Woods v. Railroad, 188 Mo. 243; Barry v. Railroad, 124 Mo. 297. (4) Even if plaintiff was a trespasser, still if the conductor or the men operating the train knew that he was in a position of peril (or if by the exercise of ordinary care they might have known he was in a position of peril) long enough before the wreck to have prevented his injury by the exercise of ordinary care, the defendant is liable. Fiedler v. Railroad, 107 Mo. 651; Klockenbrink v. Railroad, 172 Mo. 687; Jett v. Railroad, 178 Mo. 672; Scullin v. Railroad, 184 Mo. 707. (5) The defendant was guilty of gross negligence. Clark v. Railroad, 127 Mo. 210. (6) The defendant having asked an instruction requiring of it ordinary care and such instruction having been given, it is bound by it. Mirrielees v. Railroad, 163 Mo. 486.

VALLIANT, J.—Plaintiff recovered a judgment for $2,500 as damages for injuries sustained by him in a train wreck on defendant's road. The trains in the wreck belonged to the Chicago & Alton Railway Com-

pany, the lessee of the defendant's railroad. The appeal was taken by the defendant to this court because there is a constitutional question in the case, that is, the defendant, the lessor, contends that so much of section 1060, Revised Statutes 1899, on which this suit is founded, which declares that the owner of a railroad in this State which leases its road to a corporation of another State "shall remain liable as if it operated the road itself," is in violation of certain sections of the Constitution of Missouri and the 14th amendment to the Constitution of the United States.

I. We have, in the case of Markey v. Railroad, 185 Mo. 348, said all that we deem necessary to say on that question, but since, as we understand, that case is now pending before the Supreme Court of the United States on a writ of error, we will not now say that for the purpose of giving this court jurisdiction the constitutionality of that clause of that statute can no longer be drawn in question. We will therefore entertain jurisdiction of this appeal.

II. The case stated in the petition is substantially this:

The railroad belongs to the defendant, it is leased and operated by the Chicago & Alton Railway Company. On June 6, 1902, the plaintiff was at Odessa, a station on the railroad, aiming to go to Kansas City; a C. & A. freight train being there, the plaintiff asked a brakeman on the train the privilege of riding on it to Kansas City; the brakeman consented on condition that plaintiff would help unload freight along the route, to which terms plaintiff agreed. "Said arrangement was immediately called to the attention of the conductor of said train and he acting within the scope of his employment expressly assented to it and permitted the plaintiff to ride upon said train until same was wrecked as hereinafter stated." The train on which the plaintiff entered under this agreement passed on to

197 Sup.—8

a station seven miles west of Independence where it stopped on the main track and while standing there a regular passenger train, going fifty or sixty miles an hour on the same track, collided with it, with the consequence that plaintiff was thrown to the ground and severely injured. It was a rule of the Chicago & Alton Railway Company that freight trains were to keep out of the way of passenger trains with ten minutes or more time space, and also that when any train stopped between stations, one of the crew should go back half a mile or a mile with flag or lantern and place torpedoes on the track to warn an approaching train, and that was not done in this case. This freight train was four or five hours late and was running on the time of the passenger train, which it had no right to do. The men in charge of this freight train knew that the passenger train was due then and there, and they had had opportunities to side-track their train and get it out of the way, but neglected to do so, and after the train stopped on the main track as it did they neglected to send back a flagman or to place torpedoes on the track "so that when said passenger train approached around a curve the employees operating it had not sufficient notice of the presence of the freight train to stop and prevent the collision, but same became inevitable and unavoidable."

The answer was a general denial, and a plea that plaintiff was a trespasser on the train, concealed from view of the trainmen; that defendant was not liable for the acts of the Chicago & Alton Railway Company, and that plaintiff for a valuable consideration had executed a release of all claim for damages growing out of the accident. The reply put the new matter in the answer in issue.

The testimony on the part of the plaintiff tended to prove as follows:

The plaintiff, with a companion named Doyle, started from Springfield, Illinois, to go to Kansas City.

Their purpose was to travel by railroad, but not to pay railroad fare. They managed to travel on different freight trains from Springfield, Illinois, to Odessa, Missouri. From Springfield to Jacksonville they paid nothing, from Jacksonville to Roodhouse they paid a brakeman fifty cents, and between Roodhouse and Odessa they paid another brakeman seventy-five cents. They were not in a caboose at any time, but on freight cars. At Odessa they approached a brakeman and asked him to let them ride to Kansas City; the brakeman agreed to let them do so on condition that they would help unload freight which they agreed to do, and during the journey they did assist in unloading freight at one or two stations. At one of these stations the conductor stood by and saw them at work and directed the plaintiff where to put the freight. From Odessa to a way-station, plaintiff and Doyle road on a car loaded with rock ballast; after that car was dropped out of the train, they road on top of a box freight car, sitting on the running board, and the conductor passed them once or twice while they were there. At a point about five miles west of Independence the train came to a side track on which some cars were standing which it was the business of this train to take in. The train ran past the switch and stopped on the main track. In stopping the train the conductor came out of the cupola of the caboose and set the brakes on the car on which the plaintiff was riding. As soon as the train was stopped it was started back and came to the switch and was going to back in on the switch, and just then the passenger train came around the curve and collided violently with the freight train, breaking several cars into fragments, the plaintiff and Doyle were thrown to the ground and injured. As soon as the freight train in backing reached the point of the switch and before it had quite stopped, the conductor and one of the brakemen got off and walked over to the cars on the switch track, and began taking the numbers of the cars

that were to be taken into the train, and were so engaged when the collision occurred.

On the part of the defendant the testimony tended to show that neither the conductor nor any one of the train crew knew that these men were on the train. At Odessa a party of young men, 15 or 20, took passage on the train for Oak Grove where there was to be a ball game played, the train was late and these young men in order to make time volunteered to assist in handling the freight at the stations and did so. It was not unusual along the line of that road for draymen who came to the stations and wanted to get the hauling to also assist the trainmen in handling freight, and the conductor testified that whilst he saw some men helping in that way he thought they were either these young men going to the ball game or draymen; he did not know that anyone was on the train with the understanding that he was to help handle freight in consideration of being carried; that he never saw either the plaintiff or Doyle until he saw them in the hospital the next day. The conductor also testified that whilst he had a time card showing that this passenger train was due there at that time and if he had thought of it he would have known it, yet the fact was he had for the moment forgotten it.

There was a good deal of testimony on both sides relating to the extent of the plaintiff's injuries, his treatment and the alleged release, but the foregoing is substantially the tendency of the evidence on both sides relating to the question of the plaintiff's right to recover at all.

At the close of the plaintiff's evidence the defendant asked an instruction in the nature of a demurrer to the evidence which was refused and exception taken.

Did the plaintiff by his pleading and proof make out a prima facie case?

The plaintiff in his brief contends that he was a passenger. If he is correct in that contention then he

is entitled to recover, provided his right of action has not been released, because the stopping of the freight train on the main track, when and where it was liable to be struck by the passenger train, was not the exercising of that high degree of care that a carrier owes to its passengers. But this plaintiff was not a passenger even by his own showing. The relation of carrier and passenger arises out of a contract, not necessarily an express contract, for it may be implied, but it is based on contract of one kind or another. [5 Am. and Eng. Ency. Law (2 Ed.), 486-513; 3 Thompson on Neg., sec. 2642, p. 105; Id. sec. 3320, p. 737; Reynolds v. Railroad, 189 Mo. 408.]

And the contract must be one between the individual on the one side and the carrier on the other; if the carrier is to be bound by the contract it must be a contract which he has made. When the carrier is a corporation it can contract only through its agent, but that does not alter the case; if it is to bind the corporation it must be the contract of the corporation, not that of the agent. Men dealing with corporations of a public character like that of a railroad company are presumed to know the ordinary scope of the duties of a servant of the company with whom the public is brought into daily contact; they know the ordinary scope of the duties of a brakeman, a locomotive engineer and a conductor. No man of ordinary common sense needs to be told that neither a locomotive engineer nor a brakeman has authority to make a contract in behalf of the corporation for the carrying of passengers or to receive the price of carriage; no man offers to make such a contract with either such servant with an honest purpose.

Men of ordinary common sense and common experience know the difference between a freight train and a passenger train and the purpose of each, and they know the difference between a caboose in a freight train and a freight car. Therefore, when a man comes into court claiming to have been a passenger and to have been in-

jured by the failure of the carrier to exercise in his behalf that high degree of care which the law in such case prescribes, and in his proof he shows that he was riding in a box car on a freight train to which train there was a caboose attached into which he never presumed to enter, he has much to explain before the court will adjudge him to have been a passenger.

The plaintiff in this case realized in the beginning that to establish his claim to the character of passenger he must show that he was on the train by virtue of a contract, and therefore in his petition he said that before entering upon the train he made a contract with the brakeman whereby in consideration that he would help the brakeman handle freight the brakeman would allow him to ride on the train. The law charges the plaintiff with common sense and common knowledge in such matters, and therefore charges him with knowledge that the brakeman had no authority to make such a contract.

There is no difference in a legal point of view between the contracts this plaintiff made with the two other brakemen severally, whereby he paid fifty cents to one to allow him and his companion to ride from Jacksonville to Roodhouse, and to the other seventy-five cents between Roodhouse and Odessa; it was a corrupt bribe in each case, the money paid to the two other brakemen was for their use, not for the railroad company, and the agreement to assist in handling the freight which the railroad company had employed this brakeman to do was a benefit, if benefit at all, to the brakeman, and in no sense an advantage to the corporation. Not only, therefore, was the alleged contract not within the scope of a brakeman's duties, but it was an agreement for a consideration personal to himself to induce him to violate his duty. Can one who knowingly makes a contract with a servant to violate his duty to his master be heard to say that that contract is binding on the master, or that out of that contract

such a condition of affairs has arisen as gives him a right of action against the master? If one by bribing your servant induces him to violate his duty to you, and either to take of that in the servant's care which belongs to you, or to impose on you a service which the servant had no authority from you to impose, who is the injured party, you or the man who tampered with your servant?

In popular estimation the giving of a small sum to a brakeman on a freight train to induce him to allow one to ride on the train in violation of the rights of the railroad company seems to be generally considered a trivial affair and we are not now intending to magnify it, we are not discussing it from a moral standpoint, but when a plaintiff comes into court pleading such a contract and basing his right to recover upon it, the contract must be classed under its proper head and called by its right name. It is a fraud. Here the plaintiff has come into court actually pleading his fraudulent contract and asking that by virtue of it he be adjudged, if not a passenger, at least a meritorious licensee for whose protection the railroad company was under a contractual obligation.

The petition says that this contract which the plaintiff made with the brakeman was immediately called to the attention of the conductor and he "acting within the scope of his employment expressly assented to it." There was no proof of that allegation. There was proof on the part of the plaintiff tending to show that the conductor saw him handling freight at one of the stations, and saw him and his companion on top of a freight car, from which the inference might be drawn that the conductor knew that the plaintiff was on the train; that is the extent of the legitimate inference to be drawn from that evidence. There is nothing in the mere fact of seeing the man handling freight to justify the jury in drawing the inference that the conductor knew that he had made a contract with the brake-

man of the kind pleaded.   If the making of such a contract had been within the scope of the brakeman's authority, there might be some reason for the contention that seeing the man handling the freight was a circumstance from which the conductor should draw the inference that he was employed under such a contract, but when the conductor knew that the brakeman not only had no such authority, but that to do so would be a violation of his duty, he had no right to draw such an inference.   The defendant's testimony on that point was that the young men going to the ball game also assisted and that it was not unusual for draymen who came to the station to get a job of hauling to assist in handling freight.   Whilst, of course, the defendant's testimony is not to be taken into account on a demurrer to the plaintiff's evidence, yet when it is quoted by the plaintiff as an admission of the conductor that he was aware of the contract, all that the conductor said on that point is to be considered.   Strictly construing the plaintiff's petition he would not be entitled to prove a ratification by implication, because the petition in express terms pleads an express ratification, but conceding his right to prove a ratification by implication he has not done so.   There is, therefore, no necessity for us to consider the question of whether one servant could ratify an illegal contract made by another servant in fraud of a common master.

This plaintiff is not here claiming that he was on the train by invitation express or implied of the conductor; he is claiming that he was there by right, by virtue of that contract.

We have been referred to cases where it has been held that a person who goes upon a train at the invitation of the conductor with the understanding that no fare is to be paid, or who enters the train without intending to pay and is permitted by the conductor to remain and be carried, is nevertheless a passenger and entitled to the watchful care that is due a passenger.

But in such case the person was received as a passenger, acted as a passenger, and was carried in a vehicle provided for the carrying of passengers. [Wilton v. Railroad, 107 Mass. 108; Whitehead v. Railroad, 99 Mo. 263.] A learned textwriter on this subject has said: "Upon this question decisions are found which hold that, even where the conductor or other person in charge of the train has no right, as between himself and his principal, to invite or permit persons to ride free on the train, yet such a person, so riding free by invitation or permission of the conductor or train-master, will be entitled to the rights and to the protection of a passenger, *unless he knows,* or has *reasonable ground to believe,* that the conductor or train-master is inviting or permitting him so to ride in violation of his duty." [3 Thompson on Neg., sec. 3321.]

In the case at bar the conduct of the plaintiff indicated that he did not consider himself a passenger, he did not go into the caboose which was the only vehicle on the train provided for passengers and the only place on the train where the conductor would be sure to see him. His conduct was that of a man avoiding being seen by the conductor and if he was seen it was by accident. The law will not imply a tacit agreement to constitute the plaintiff a passenger in the absence of any circumstances indicating either that he considered himself a passenger or that the conductor so considered him; it will not imply such a tacit agreement from the mere fact that the conductor saw him on the top of a freight car in the train where no passenger had a right to be and when there was a caboose on the train provided for passengers.

But the plaintiff contends that if he was not a passenger he was a licensee and therefore if not entitled to the high degree of care that belongs to a passenger he was entitled to the ordinary care which is the due of one who is on the train by leave though not by right.

The only ground on which the plaintiff claims that there was any difference between his case and that of a mere trespasser is his alleged contract, that is, he was on the train by permission of the brakeman and with the knowledge of the conductor.

If a visitor approaches your house in the usual way and is admitted by your servant, he cannot be said to be a trespasser, even though you had previously ordered your servant to admit no one. But if knowing your order, the intruder should bribe your servant and by that means gain admission, in what respect is he better than a mere trespasser? If the plaintiff knowing that he has no right to ride on a train without paying fare (and everybody knows that) gives a brakeman fifty cents to allow him to ride and by that means is received on the train and carried, does that transaction raise an obligation on the part of the corporation to treat the plaintiff with more care and consideration than it would be required to treat him if he had merely intruded on the train stealthily and without leave? We have no fault to find with those decisions that hold that the conductor of a train *en route* is as to the government of that train the corporation, and that when he invites or knowingly permits one to ride free on his train, that person, in the absence of fraud on his part, is entitled to be treated as a passenger. But in such case, since the act of the conductor is out of the usual course, his invitation or permission will not be implied from equivocal circumstances and never in aid of a fraudulent scheme to avoid payment of fare.

Our conclusion is that the plaintiff on this train was a mere trespasser and the railroad company owed him no duty except not to injure him if by the exercise of ordinary care after his peril was discovered the injury could be avoided. The evidence shows that the conductor, unmindful for the time being that a passenger train was due then and there, negligently stopped his train on the main track, and was preparing

to pick up some cars that were on the side track, and while his mind was on that work the passenger train came in sight around the curve and it was then too late to do anything to avoid the collision.

It was negligence in the conductor to forget that a passenger train was due then and there, and for a passenger injured the company would be liable, but there is nothing in the evidence to justify the inference that the conductor knew that this train was coming, the most that can be said against him is that he ought to have known it. Whilst it appears from the evidence that he did not send back a flagman or cause torpedoes to be put on the track, it does not appear that between the time he stopped and the time the passenger train came there was time enough to have done so. Assuming that the conductor knew that the plaintiff was on the train he did not know the peril in which the plaintiff was until he saw the passenger train coming and then there was nothing he could do to avoid the collision.

Our conclusion is that the instruction in the nature of a demurrer to the evidence should have been given. The judgment is reversed.

All concur.