MARY R. YOUMANS, Respondent, v. WABASH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, March 7, 1910.

1. **RAILROADS: Humanitarian Doctrine: Trespasser.** Plaintiff's son, a minor, by collusion with defendant's conductor, was wrongfully riding in the caboose of one of defendant's trains. While the train was stopped at a station another train following collided therewith, killing plaintiff's son. Under the facts of this case defendant was not liable for his death.

2. ———: ———: ———. A person riding on a train without the company's consent, and by collusion with its employees, is a trespasser.

3. ———: ———: ———. The humanitarian doctrine does not apply to the ordinary mistakes or negligence or mismanagement of trains. The negligence of the conductor in letting his train stand on the main line, the negligence of the brakeman in failing to warn the following train, and the negligence of the engineer of the following train to heed or observe warning signals, were acts which did not enter into the elements of the humanitarian doctrine. The imminent peril giving rise to the humanitarian doctrine did not arise until it was discovered that the coming freight was about to collide with the standing one.

4. ——: ——: ——. Danger merely apprehended and which might never occur, does not constitute imminent peril. The peril must actually exist and be impending. In such cases the company may be liable for an injury to a passenger but not to a trespasser. In this case the only duty owed deceased was to use reasonable care not to injure him after he was known to be in a place of actual impending danger. That the brakeman on the standing train might have known of the danger is not sufficient. In such case the rule that if defendant by the exercise of ordinary care might have known of plaintiffs imminent peril in time to have averted the accident by the exercise of ordinary care and caution does not apply.

Appeal from Boone Circuit Court.—*Hon. N. D. Thurmond,* Judge.

Reversed.

*J. L. Minnis, G. P. Smith* and *E. W. Hinton* for appellant.

(1) It appears without contradiction or controversy that Youmans, with full knowledge of the conductor's lack of authority, and of the express rules forbidding it, persuaded him to allow him to ride free of charge on a through freight train which was not permitted to carry passengers. Hence, deceased was in law, and in fact, a trespasser upon the train at the time of the accident. Purple v. Railway, 114 Fed. (C. C. A.) 123; Eaton v. Railway, 57 N. Y. 382; O'Donnell v. Railway, 197 Mo. 110; Powers v. Railway, 153 Mass, 188; Railway v. Brooks, 81 Ill. 245. (2) The defendant was under no duty to protect such a trespasser upon its train—that is—it was under no duty to prevent injury from happening to him. At the most, the duty of the defendant's servants was purely negative, to refrain from wantonly or recklessly inflicting injury upon him after discovering that he was in actual and imminent danger from the threatened collision. Wenker v. Railway, 169 Mo. 592; O'Donnell v. Railway, 197 Mo. 110; Purple v. Railway, 114 Fed. 123; Railway v. Meacham,

19 S. W. (Tenn.) 232; Earl v. Railway 79 N. W. (Ia.) 381; Eaton v. Railway, 57 N. Y. 382; Powers v. Railway, 153 Mass. 188; Feeback v. Railway, 167 Mo. 206.

*E. Rosenberger & Son* and *Barclay, Fauntleroy & Cullen* for respondent.

(1) Where the consequence of negligence will probably be serious injury to others, and where the means of avoiding the infliction of injury upon others is completely within the party's power, ordinary care requires almost the utmost degree of human vigilance and foresight. Kelsey v. Barney, 2 Kernan, 1. c. 429; Cobb v. Railroad, 149 Mo. 626; Teeney v. Railroad, 123 Mo. App. 420. (2) Although a trespasser, or bare licensee, the defendant owed to deceased the duty not to injure him, if by the exercise of ordinary care, it could avoid it after his danger became known to the defendant. Mirrielees v. Railway, 163 Mo. 470; Whitehead v. Railroad, 99 Mo. 263; Railroad v. Kassen, 49 Ohio St. 230, N. E. 282; Pettit v. Railway, 62 Minn. 530, 64 N. W. 1109, 59 N. W. 1082. (3) A failure to act so as to prevent injury to another, by a person who owes to the other the duty of ordinary care, brings a case within the application of the humanitarian doctrine; and it is not necessary to prove wantonness, willfulness, or recklessness. Dragmund v. Railroad, 112 Mo. App. 160; Jager v. Railway, 114 Mo. App. 10; White v. Railroad, 202 Mo. 539; Johnson v. Railway, 203 Mo. 399; Moore v. Transit Co., 194 Mo. 390; Hinzman v. Railway, 182 Mo. 611.

BROADDUS, P. J.—The plaintiff sued to recover the penalty provided by the statute for the death of her son, Howard T. Youmans, a minor, which occurred in a collision between two of defendant's freight trains, on the 15th day of April, 1907, at High Hill station, Missouri.

The son lacked about one month of being twenty-one years of age at his death. He was a telegraph operator but was out of employment at the time. On the day in question he and a companion reached Moberly and applied to defendant's chief dispatcher for a pass to St. Louis, which he refused them; whereupon they went to the freight yard office of defendant and introduced themselves to one Edmonson, who was on duty there, and persuaded him to solicit some freight conductor to give them a free ride to St. Louis. Edmonson saw conductor Rodgers and induced him to let deceased and his companion ride on the first section of east-bound freight train No. 92, sent out in two sections, which was a through train, and was not permitted to carry passengers, unless they accompanied live stock on the train, or held a special permit from the superintendent of the company, all of which was known to the deceased.

The deceased and his companion got into the caboose of the car at Moberly without paying any fare. The first section of Ninety-two had orders to take coal and water at High Hill station, and to meet a west-bound freight train at that place, at 10:50 p. m. When it reached the west end of the coal chute switch, at about fifteen hundred feet west of the station building, the engine was detached and carried down to the coal chutes situated on the south side of the train, leaving the train standing on the main track with the east end near the switch target, which left the rear end of the caboose about a half a mile west of the station. This train reached the point named at 10:50 p. m., consequently it had about twelve minutes to take coal and water before the west-bound freight was due. It was shown that this was the usual and proper method on such occasions. When this train stopped, Rodgers, the conductor, went to the station for orders, leaving the brakeman, Griffith, in the caboose.

Rule 99 of defendant was introduced in evidence, which reads as follows:

"When a train stops or is delayed under circumstances in which it may be overtaken by another train, the flagman (rear brakeman) must go back immediately with stop signals a sufficient distance to insure full protection. When recalled, he may return to his train, first placing two torpedoes on the rail, when the conditions require it."

There was evidence however that employees of the company did not practice a strict compliance with the rule for ordinary and regular stops at stations when the weather was clear; that on such occasions it was not customary to send back a flagman but to use instead what was called a short flag, that is to have the flagman signal at or near the rear end of the train in case another train came up behind.

It was shown that Griffith, the brakeman, knew that a second section of Ninty-two was following, but that he did not anticipate any danger of a rear end collision, because he knew that if the second section was let into the same block before the first section cleared it, it would receive a caution card to proceed with the train under control, and to be on the lookout for the first section, and because the second section was running on the same order as the first and would have to stop at the same place.

Further facts are that when the first section stopped, a stockman in the caboose requested Griffith to fix up the fire, and he did so, which took about fifteen minutes of time; that Griffith then looked out and saw the headlight of the second section some distance back estimated to be about two or three miles; that he then took his lantern and gave signals from the rear platform of the caboose; but receiving no response, he then went back about fifteen carlengths and repeated his signals but failed again to get any response; and that he then became alarmed, and ran back

to the caboose and shouted to the persons in the caboose to get off, but before they could move, the second section struck the caboose killing the deceased and injuring others therein. It was shown that the tail lights were burning on the rear of the caboose; that the engineer of the second section had received the caution card at New Florence about four miles west of High Hill, but it was not shown why he failed to observe the said tail lights and signals. It was further shown that first section of Ninety-two lost ten minutes of time of New Florence on account of a hot box and that it had been standing about thirty minutes on the main track before it was struck; and that where it stopped the rear end of the caboose was about 1528 feet west of the west end of the switch.

The defendant offered a demurrer to the plaintiff's evidence which the court refused and submitted the case to the jury.

Among other instructions the court instructed the jury as follows:

"The court instructs the jury that if you find and believe from the evidence that one Howard T. Youmans, with the knowledge and consent of the conductor in charge of one of defendant's freight trains, known as the first section of number Ninety-two, was riding in the caboose of said train, and that after said train reached a point on defendant's line near High Hill station, the defendant, through its agents and servants in charge of said train, stopped it, and allowed it to remain standing on the main line of the track a sufficient length of time to place the said Youmans in a position of imminent peril by reason of said train being followed by the second section of number Ninety-two, on the same track; and if you further believe that the rear brakeman in charge of the first section of number Ninety-two knew of the peril and danger to which said Youmans was exposed, and that he, the rear brakeman, possessed this knowledge in time, by the exercise

of ordinary care, to flag or signal the second section of number Ninety-two and enable the persons in charge of said second section to stop it by exercising ordinary care, before striking the first section; and if you further believe said rear brakeman, after ascertaining Youmans' peril, failed to use ordinary care and diligence to flag or signal said second section, and as a direct consequence of said failure it was not flagged or signaled in time to prevent a collision and as a direct result of such failure said second section collided with the first section and caused the death of the said Howard T. Youmans, then you will find for the plaintiff, even though train number Ninety-two did not carry passengers."

The plaintiff recovered judgment for $6500, and defendant appealed.

The instruction given for the plaintiff indicates that the court entertained the theory that if defendant, in the management of its train upon which deceased was a passenger, left him in a position of peril and that the rear brakeman failed to exercise ordinary care to signal the second section the defendant is liable.

Before we proceed to a discussion of the proposition stated it will be well to define the status of the deceased in relation to the defendant. There can be no doubt that when he took passage on the freight train under the circumstances he became a trespasser. He well knew that it was against the express rules of the company to carry passengers on said train. Having applied to the chief dispatcher for permission to be carried and meeting with a refusal he finally through collusion with the conductor and another employee of the company was admitted to the caboose to be carried free. His conduct amounted to a fraud upon the company and consequently he did not become a bona fide passenger. [O'Donnell v. Railroad, 197 Mo. 110.]

The deceased being a trespasser the company owed him no duty except not to injure him if by the exercise

of ordinary care it could avoid doing so, after the discovery of his peril. In other words he was entitled to the protection afforded by the humanitarian rule. [Mirrielees v. Wabash Ry. Co., 163 Mo. 470; O'Donnell v. Railroad, 197 Mo. 110.] This rule is too well settled to require further citation or comment.

Upon this theory of the case the question arises whether under the facts the plaintiff was entitled to recover? The company owed deceased no such duty as to render it liable for the mistakes or negligence of its employees. Consequently the company was not liable to him for any injury he may have suffered by a mismanagement of the train. The theory of the plaintiff is that when the conductor left the train on the main line with the knowledge that the second section was following he left deceased in a position of peril and that the failure of the rear brakeman to warn the said second section of such peril rendered defendant liable. We do not think so. It is true there was danger to be apprehended if the following section was not warned of the fact that the preceding one was standing on the main track. But this danger might have been avoided had the rear brakeman complied with the rule of the company by going back and placing torpedoes on the track or by other signals, or by the engineer of the second section taking heed of the caution card which was furnished to him at New Florence; or by having discovered the signals that the rear brakeman gave, when he first discovered its approach. It follows therefore that there was no immediate danger or imminent peril until it was discovered that the coming freight was about to collide with the caboose at which time no effort of the brakeman could have prevented it. Danger merely apprehended and which might never occur does not constitute imminent peril. The peril must actually exist and be impending. It is said in such instances the company would be liable for an injury to a passenger but not to a trespasser. [O'Donnell v.

Railroad, 197 Mo. 1. c. 123.] That was a case similar to this one in almost every particular. The only duty owing deceased by the company was to use reasonable care not to injure him after he was known to be in a place of actual impending danger. That the brakeman might have known of the danger is not sufficient. "In such case the rule that if defendant by the exercise of ordinary care might have known of plaintiff's imminent peril in time to have averted the accident by the exercise of ordinary care and caution does not apply." [Hall v. Railroad, 219 Mo. 553.]

We have examined plaintiff's authorities and they do not sustain her position. There was no conflict in the evidence and the court was in error in assuming that deceased could be in imminent peril at any time until it was discovered that the second section was about to collide with the caboose. And the mistake of plaintiff is that she bases her right of recovery as a matter of fact upon the negligent manner in which the train was managed. The company owed no duty to deceased in that respect. All the authorities agree on this question.

The court committed error in not sustaining defendant's demurrer to plaintiff's evidence. As plaintiff is not entitled to recover it is useless to discuss other questions raised on the appeal. Reversed. All concur.