CECIL STEVENS, BY NEXT FRIEND, RESPONDENT, v. WABASH RAILWAY COMPANY, APPELLANT.*

Kansas City Court of Appeals. December 31, 1928.

*Corpus Juris-Cyc References: Railroads, 33Cyc, p. 962, n. 68; p. 1048, n. 41; p. 1053, n. 86; p. 1084, n. 10; p. 1129, n. 68; Trial, 38Cyc, p. 1381, n. 7; p. 1475, n. 13.

*Murrell & Murrell* and *M. D.* and *J. M. Campbell* for respondent.

*Homer Hall* and *Higbee & Mills* for appellant.

ARNOLD, J.—This is an action in damages for personal injury. Plaintiff, a minor lived in Kirksville, Missouri, and this action was instituted by his next friend. Defendant is a railroad corporation and operates a line of railroad through Kirksville, its track running approximately north and south through the western part of the city. Plaintiff lived four or five blocks to the southwest of defendant's tracks. On August 9, 1926, plaintiff, then nineteen years of age, was injured while attempting to climb between the cars in a northbound freight train standing on the main line track in Kirksville, thereby blocking the crossing on Scott street upon which plaintiff was proceeding from his home to the main part of the city. Defendant's passenger station is two blocks west of the southwest corner of the public square and stands on the east side of defendant's tracks. Jefferson street runs east and west and intersects, almost at right angles, defendant's right-of-way and tracks two blocks west of the southwest corner of the public square; one block south of Jefferson street and running parallel therewith is Pierce street which is three blocks south of the passenger station. Scott street (sometimes called Stockyards street) is four blocks south of the passenger station and runs parallel with the streets just named, being two blocks south of Jefferson street. Defendant's freight station is about one block south of the passenger station and is also on the east side of the track.

At about six o'clock in the afternoon of August 9, 1926, plaintiff started from his home to go to the State Teachers College which is located several blocks east and south of the intersection of the railroad tracks and Scott street. When he reached a point on Scott street about one block west of the crossing, a northbound freight train No. 87 was then standing, blocking the crossing. Plaintiff testified he walked to the crossing and waited several minutes for the train to cut, or clear, and then attempted to climb between two of the cars in the train; that, while he was between the cars the train suddenly moved forward about five yards and his right foot slipped in between the coupling-head and the draw-plate, and when the train stopped, his foot was mashed. He was unable to extricate his foot and it was held in that position for about fifteen minutes before it was released. He testified he did not notify any of the train crew that he was going to pass between the cars; that he did not see the engine or any member of the train crew before he attempted to pass between the cars; that the north end of the train at the time was near the freight depot about two or three blocks north.

Other testimony shows the train was made up of seventy-two cars, each about forty feet in length; that the rear end of the train was about thirty cars south of the shoe factory which is located about five blocks south of Scott street. The engineer was seated on the

right, or east side of the cab. One brakeman was riding on the head end and another on the rear when the train pulled into Kirksville, and the conductor was in the caboose which he did not leave. When the train stopped, the rear brakeman uncoupled the train at the shoe factory crossing, leaving about thirty cars south thereof. When he thus uncoupled the train the brakeman was on the east side thereof and he signalled to the front brakeman, also on the east side, to move forward to clear the crossing which was done. At this time the front brakeman, Miller, was standing near the engine and on the east side thereof, approximately a block north of Scott street. The testimony shows that Miller then uncoupled two cars at the front of the train to be set out at the freight depot and the engine pulled them north by the passenger station to the side track leading to the freight depot, and backed them in on the track.

About this time one O. E. Hunsaker heard plaintiff's outcry that he was caught between the cars. Hunsaker, thereupon, ran up to the engine near the passenger station and told brakeman Miller that a man was fast between the cars on the train and asked him to back the train and release him. He then told the engineer the same thing, and, according to Hunsaker's testimony, the cars were then spotted and the engine put upon the main track where it was backed down and plaintiff was released. As to how long a period elapsed after Hunsaker reported the situation to brakeman Miller until plaintiff was released is variously estimated by witnesses, some stating it was fifteen minutes while others say it was five.

Much testimony in plaintiff's behalf was to the effect that for a long time prior to this occurrence, freight trains frequently blocked crossings in Kirksville, including the one on Scott street, for periods ranging from five minutes to over an hour, and that on such occasions many persons climbed under, between, or over the cars; that on previous occasions members of the train crews were standing nearby when plaintiff as well as others climbed through, between or over the standing cars; that sometimes the crews objected but at other times they made no objections. One witness stated that at times members of crews had advised persons not to do so, while other witnesses testified they, themselves, had warned persons not to climb under, between or over the cars. There is no evidence that any member of the crew knew that plaintiff was climbing between the cars at the time of the injury in question, or that any member of the crew saw him at any time prior to his release from the position between the cars. Plaintiff stated he saw no member of the crew; that he approached the train from the west side, waited some minutes, and finally decided to take a chance and then attempted to go through the train. The petition charges:

"That on said August 9, 1926, plaintiff, Cecil Stevens, passed along said Scott street and approached said train so standing upon said railroad from the west, and after waiting several minutes for said train of cars to be moved, attempted to cross said railroad by passing between two of said cars; that defendant knew or by the exercise of ordinary care on its part could and would have known that plaintiff was crossing between said freight cars at that time, and knew or by the exercise of ordinary care on its part at that time would have known that plaintiff was between said cars and in event defendant caused the same to be moved, said plaintiff would be injured thereby, but notwithstanding said knowledge, defendant negligently and carelessly caused said engine to move forward and pulled said freight cars between which plaintiff was passing, thus causing said freight cars to come violently together and in consequence plaintiff's right foot was caught between said cars and held for a period of about fifteen minutes, crushing said foot and ankle and maimed and mashed the same, and that the injuries thus received are permanent, and caused him great agony of body and mind and he will in the future suffer therefrom; that during said period of time while plaintiff's said foot was so caught and held between said cars, defendant knew that he was so caught and held between said cars and negligently and carelessly failed and refused to release him therefrom, and that because of the said failure and refusal to release plaintiff therefrom, he was caused to suffer great agony of body and mind and the injuries to his said foot were rendered worse than they would have been, had he been released therefrom as soon as defendant learned that he was so caught and held as aforesaid. That continuously at frequent intervals for a number of years immediately preceding the date last aforesaid and at times when trains of cars were standing upon said railway track and obstructing travel along said Scott street, a large number of persons were in the habit of passing between said cars so standing as aforesaid, all of which the defendant at all of the times herein stated well knew or by the exercise of ordinary care on its part could and would have known on the day and before the plaintiff was injured as aforesaid and for a long period of time theretofore."

The answer is, first, a general denial of all allegations in the petition, excepting that defendant is a corporation, and as affirmative defense the answer pleads contributory negligence. Plaintiff's reply is a general denial. The cause was tried to a jury.

At the close of plaintiff's evidence, defendant interposed a general demurrer and also a special demurrer, the latter seeking to have the jury instructed that the humanitarian doctrine has no application to this case. Both demurrers were overruled. Similar demurrers were offered at the close of all the evidence but were refused by the court.

The verdict was for plaintiff in the sum of $1500. Defendant's motion for a new trial was denied and the case was brought to this court by appeal.

The first point urged in support of the appeal is that the court erred in overruling defendant's timely objection to the introduction of any evidence upon the ground that the petition fails to state a cause of action, in that it fails to allege that defendant or its employees knew plaintiff was in a position of peril when he attempted to climb between the cars of the train. It is urged that the humanitarian rule has not been extended so far as to require persons operating a train to be on the lookout for trespassers who might be attempting to pass between the cars of a standing train; that the law requires actual knowledge on the part of the train crew to impose liability under such circumstances.

While the petition might be construed as attempting to charge a case of primary negligence at the same time, we hold it properly pleads a case under the humanitarian rule in alleging "that defendant knew or by the exercise of ordinary care on its part could and would have known that plaintiff was crossing between said freight cars at the time, and knew or by the exercise of ordinary care . . . would have known that plaintiff was between said cars, and in the event defendant caused the same to be moved, said plaintiff would be injured thereby . . ." The court did not err in overruling defendant's objection to the introduction of any evidence in the case. Plaintiff tried his cause throughout upon the humanitarian theory, while defendant vigorously attempted to confine the issues within the rules of primary negligence. Since we find the petition states a cause of action under the humanitarian rule it remains only to be determined whether there was any substantial evidence in plaintiff's behalf to take the case to the jury. We think there was. In fact there was much evidence tending to show that for many years prior to the occurrence in question it had been the custom and practice, with the knowledge of those in charge of defendant's trains, for pedestrians to pass between the cars when the Scott street crossing was blocked, and that such blocking of the crossing occurred almost daily. It is not necessary to state that where a case is made under the humanitarian rule the question of the plaintiff's negligence is conceded.

A large part of defendant's argument is an attempt to show plaintiff's contributory negligence. Such negligence is not disputed but is admitted and we need refer to that question no further. Perhaps the leading case in this State applying the humanitarian rule to such situation as is here presented is that of Dalton v. Railway Co., 276 Mo. 663, 208 S. W. 828, cited by both parties hereto. To the same effect is the case of Ahnefeld v. Railroad, 212 Mo. 280, 111 S. W. 95.

In the Dalton case it was shown the tracks and yards of defendant were used by pedestrians and that the plaintiff, a boy of fifteen, was playing upon the top of a freight car on the side track. The railroad company moved the cars without proper precaution, thereby injuring plaintiff. In the main opinion, l. c. 678, et seq., GRAVES, J., says:

"The doctrine is, that continuous user for such a time as to enable implied notice to the railroad to be imputed, requires the railroad to be upon the lookout. Such railroad has no right to expect a clear track, and proceed upon the theory of a clear track. Such user requires the railroad to be upon the lookout for persons who might be upon the track, and if by the exercise of reasonable care, such persons could have been seen, and the injury averted by the exercise of reasonable care, then, if injury happens, the railroad may be held liable. So too, we think that if children have been playing in, upon and around the standing cars in a switch yard so continuously and for such length of time, that the employees of the railroad should have known of this user, then there is imposed upon the railroad the duty of keeping a reasonable lookout for such children."

(l. c. 681) "Continuous trespassing does not make the person any the less a trespasser, but the long continued trespassing does give knowledge to defendants, and this knowledge imposes the duty to be on the lookout for such trespassers. In other words, if the defendants saw, or by the exercise of reasonable care could have seen the plaintiff in time to have prevented the injury, then the conceded negligence of the plaintiff would not preclude a recovery."

The same principle is enunciated by BLAIR, J., in a separate concurring opinion in the Dalton case, concurred in by WILLIAMS, J., where it is said:

"In approaching a spot which has been subjected to such user as to give constructive notice of the probable presence of persons in a place of danger, it is the duty of operatives in charge of a train to use reasonable care to discover the presence of such persons and avert injury to them. What is reasonable care in a particular case is dependent upon surrounding circumstances. I fear paragraph II possibly is open to the construction that in any case it is a defense if the operatives were actually in a position from which they could not see if they had looked. Can the company place its employees on or near the engine, back a string of cars a half mile long around a curve, the cars taking such a position that the spot where persons are to be expected to be in a place of danger cannot be seen, and then be upheld when it asserts its employees could not have seen such person had they looked ever so carefully? Is it reasonable care, in the performance of the duty to keep a lookout to discover a dangerous situation, to put yourself in a position from which it is physically impossible for such lookout, however faithfully maintained, to

enable you to see the place of probable danger at all until the injury is inflicted?

"The duty to keep a lookout in a case like this implies a duty to have some one in a position from which a lookout can be kept."

And so we are of the opinion defendant in the instant case failed to use reasonable care in failing to keep a lookout at the Scott street crossing, when it knew or by the exercise of reasonable care, could have known that persons might be at that place in a position of danger.

The question of user and the rule applicable thereto are well defined in the dissenting opinion of FARIS, J., in the Dalton case, l. c. 683, as follows:

"I concede that there was shown abundant user through a long period of years, of defendant's yards and tracks, to create a custom through user from which a license to walk on the tracks may be deduced, so as to necessitate the maintenance, under the rule in the Ahnefeld case, of a lookout for persons walking on, or crossing over these yards and tracks. But that is not the case before us; a license to walk on or cross over the yards and tracks does not embrace or include a license to enter on and in cars standing on such tracks and in such yards." [See, also, the case of Ahnefeld v. Railroad, 212, Mo. 280, 111 S. W. 95.] It is noted that in neither of the cited cases was the actual knowledge of the presence and dangerous position of plaintiff required of the defendant. User was the basis of the rulings. Defendant has cited no case contrary to the rule followed in the Dalton and Ahnefeld cases, and we may pass that point without further comment.

Defendant further charges the court erred in overruling its demurrers, both general and special, at the close of all the evidence. It is contended in this connection that (1) plaintiff was a trespasser; (2) there was no showing defendant's employees knew plaintiff was attempting to pass between the cars of the standing train; (3) the humanitarian doctrine has not been extended so far as to require a train crew to be on the lookout for an unseen trespasser. Numerous citation are presented in support of this position but they do not apply in cases under the humanitarian doctrine. What we have already said rule this point against defendant.

It is urged the court erred in giving plaintiff's instruction No. 1 because (1) defendant's demurrers should have been sustained; (2) said instruction does not require the jury to find that defendant's employees in charge of the train had any knowledge of plaintiff's presence between the cars and of his peril, but submits the case to the jury on the theory that defendant was required to anticipate and know of plaintiff's presence and peril; (3) submits to the jury the question as to whether or not plaintiff was released as promptly as

the jury might conclude defendant's employees could have released him.

What we have already said rules all these points against defendant, except No. 3. We think the court was justified in giving the instruction on this point because there was substantial testimony from which the jury could properly conclude that plaintiff was not released as soon as he might, or should, have been. There was some conflict in the evidence on this point, defendant's witnesses testifying that plaintiff was released in about five minutes after the injury, while plaintiff's witnesses fixed the time at fifteen minutes. This evidence was proper as tending to show, at least, aggravation of the injury.

The same ruling applies to defendant's charge of error. against plaintiff's instruction No. 2, as well as to plaintiff's instructions 3 and 4, which deal with the same point. It is also charged the court erred in overruling defendant's objection to that part of the opening statement of plaintiff's counsel to the effect that parts of the conversation between the brakeman and witnesses to the effect that the brakeman said he "didn't have time to go down and move the car and loosen it so he could get him out," and that when he did go, the brakeman said to plaintiff, "What in the hell are you doing here? Maybe you will learn not to get on trains that are moving." We think the court did not err in its ruling on this point. Upon the theory upon which the case was tried, the statement was proper as tending to show there was unnecessary delay in releasing plaintiff and the attitude of the brakeman in the premises. The same ruling covers defendant's points 8, 9 and 10 to the same effect.

It is urged the court erred in permitting plaintiff to testify, over objections of defendant, that he heard no signal, or warning whistle from the engine before he attempted to cross between the cars of the train. The record discloses the objection was general. It is the law that a general objection is no objection if the evidence against which the same is urged is competent for any purpose. [Hafner Mfg. Co. v. St. Louis, 262 Mo. 621, 172 Mo. 28; State ex rel. v. Diemer, 255 Mo. 336.] It is further noted the answer alleges plaintiff voluntarily placed himself in a position of peril and danger. Under this allegation it would have been competent for defendant to have shown that the whistle was blown; therefore, as against the general objection, there was no error in permitting plaintiff to testify no warning signal was given. The question of the failure to sound a warning whistle was not submitted to the jury by instruction, and was not made a ground for recovery. We rule against defendant on this point.

We find no reversible error of record. The judgment is affirmed. *Bland, J.,* concurs; *Trimble, P. J.,* absent.