WILLIAM McCLANAHAN, a Minor, by JAMES McCLANAHAN, His Next Friend, Plaintiff-Respondent, v. ST. LOUIS PUBLIC SERVICE COMPANY, a Corporation, Defendant-Appellant, No. 42901—251 S. W. (2d) 704.

Court en Banc, October 13, 1952.

*Mattingly, Boas & Richards* and *Lloyd E. Boas* for appellant.

*Paul H. Koenig* and *William L. Mason, Jr.,* for respondent.

VAN OSDOL, C.—Action for personal injury sustained by plaintiff when he fell from the side of defendant's "900 type" streetcar as it was moving eastwardly on St. Louis Avenue east of the intersection of the Avenue with Belt Street in St. Louis. As defendant's streetcar was moving eastwardly as stated, plaintiff, a boy ten years old, was clinging to the handholds on the outside of the right rear double exit door of the vehicle. His toes were on "that little ledge by the door."

Plaintiff alleged that defendant's agent and operator knew of plaintiff's perilous condition and position and did not stop or slacken speed, but directed plaintiff to get off and, when plaintiff did not do so, the operator negligently accelerated the speed of and violently jerked the streetcar and thereby threw plaintiff therefrom "when by the exercise of ordinary care defendant's said agent and operator could have stopped said street railway car and caused plaintiff to get off - - - or slackened the speed so that plaintiff could have gotten off with reasonable safety" and thereby could have avoided injuring plaintiff.

Plaintiff's case was submitted to the jury upon negligence under the humanitarian rule, hypothesizing the circumstances that plaintiff was holding on and clinging to the outside of defendant's streetcar while it was in motion; and "if you further find and believe from the evidence that the plaintiff was then and there in a position of imminent peril; and if you further find and believe from the evidence that the motorman saw plaintiff in such position; and if you further find and believe from the evidence that thereafter the motorman directly caused the street car to increase speed and give and make a sudden jerk; and if you further find and believe from the evidence that the motorman thereby failed to exercise ordinary care in the use of the means and instrumentalities at hand, and for plaintiff's safety, after he saw plaintiff in a position of imminent peril; and if you further find and believe from the evidence that plaintiff was thrown

from - - - the said street car, directly due to the said increase of speed and jerk - - -.''

The jury awarded plaintiff $6,000 damages. Defendant moved for judgment in accordance with its former motion for a directed verdict. The motion was overruled, and defendant appealed to the St. Louis Court of Appeals. The Court of Appeals affirmed the trial court's judgment, but transferred the cause to this court for a re-examination of the question whether the existing law of Missouri (when applied to the evidence, considered from a standpoint favorable to plaintiff) justified the submission of plaintiff's case to the jury under the humanitarian rule. McClanahan v. St. Louis Public Service Co., Mo. App., 242 S.W. 2d 265.

 It is our duty to review the case as if it had been originally appealed to this court, but, having carefully read the record, we have found that the statement of the facts made by the St. Louis Court of Appeals was most painstaking and accurate. It is also sufficient for our review to adopt the correct summary or analysis of the effect of the evidence as bearing upon the question of when the plaintiff was in ''imminent peril'' as summarized by the St. Louis Court of Appeals, 242 S. W. 2d at pages 268-269, which summary is as follows,

''It is true that the facts in this case do not ·fall into the conventional and orthodox humanitarian pattern. There was no inexorable circumstance, situation or agency bearing down on plaintiff with reasonable probability of injury, prior to the negligent act of defendant's operator. True enough, plaintiff was in a precarious position, indeed one fraught with perilous possibilities, as he clung to the side of the streetcar, but something would have to happen other than that which was then happening before injury would befall plaintiff. He would have to slip, faint, lose his footing, jump, or be shaken, thrown, frightened, jerked or pushed off the moving car, or be brushed off by contact with another object along the route of the streetcar, or relax his grip due to fatigue. 'Imminent peril' as it is generally understood would not arise under the facts of this case until the occurrence of the negligent act of accelerating and jerking the streetcar. Furthermore, since the arising of the situation of imminent peril and the happening of the casualty were practically simultaneous there was no sufficient time interval for the defendant to have taken any action to avoid the casualty after the arising of the peril. There was no time after plaintiff's hands were pulled away from the grab-irons for the defendant's motorman to have taken any effective action to prevent or avoid the plaintiff's injuries.''

 Plaintiff-respondent has expressly admitted that he was a

trespasser on defendant's streetcar, and that recovery on primary negligence is barred.

The humanitarian rule has been held by this court to be applicable to situations wherein a plaintiff could have been in imminent peril only because of something defendant was about to do, and, when defendant did it, plaintiff's injury almost immediately ensued. See Dalton v. Missouri K. & T. Ry. Co., 276 Mo. 663, 208 S.W. 828; Bobos v. Krey Packing Co., 317 Mo. 108, 296 S.W. 157; Weed v. American Car & Foundry Co., 322 Mo. 137, 14 S.W. 2d 652; Menard v. Goltra, 328 Mo. 368, 40 S.W. 2d 1053; Took v. Wells, 331 Mo. 249, 53 S.W. 2d 389; and Huckleberry v. Mo. Pac. R. Co., 324 Mo. 1025, 26 S.W. 2d 980. And the Kansas City Court of Appeals has applied the humanitarian rule to like situations in Stipetich v. Security Stove & Mfg. Co., Mo. App., 218 S.W. 964; and Stevens v. Wabash R. Co., 223 Mo. App. 201, 14 S.W. 2d 506. See also Daniel v. Artesian Ice & Cold Storage Co., Mo. App., 45 S.W. 2d 548. But note the actual submission in the Stipetich case—defendant's act was "in reckless disregard of the safety of deceased."

In examining these cases we have come to the conclusion that, apart from any consideration of contributory negligence or the status of a particular plaintiff as a trespasser, the facts justified the submission of the respective cases upon the theory of the responsibility of the respective defendants for their conduct as (primary) negligence; or upon the theory of defendants' willful, wanton or reckless conduct. It was said in Ridge v. Jones, Div. No. 2, 335 Mo. 219, 71 S.W. 2d 713, that, in some of the cases cited supra, the courts in approving submissions upon negligence under the humanitarian rule proceed upon the theory that "plaintiff was in a situation such that, while not in imminent peril, absent the negligent act of defendant in question, he was in imminent peril if such act was committed." If such were a sound theory, then it could be urged [707] that all persons whose injuries were occasioned by the wrongful act or conduct of another were theretofore in "imminent peril" within the meaning of the term under our humanitarian rule. We believe the humanitarian rule should not have been held to be applicable to the facts of the cases cited in the preceding paragraph. It seems to us the wrongful acts or conduct noted in the respective cases brought plaintiffs into imminent peril, yet the acts or conduct of the respective defendants either immediately caused the plaintiffs' injuries, or the plaintiffs were injured as the result of defendants' acts or conduct so near to the time plaintiffs were in imminent peril that defendants were liable, if at all, not for negligence under the humanitarian rule but for their primary conduct amounting to negligence, or amounting to willfulness, wantonness or recklessness.

In the leading case stating in simplest terms the constitutive facts or essential elements of a claim or cause of action under the humanitarian rule, it was stated that one of the constitutive facts is "(1) Plaintiff was in a position of peril." Banks v. Morris & Co., 302 Mo. 254, 257 S.W. 482. It was said even before the Banks decision, and it has subsequently become the settled law that, in order for the humanitarian rule to be applicable to a plaintiff's case, there must be substantial evidence tending to show plaintiff was in "imminent" peril—the peril truly must be *imminent*, that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A bare possibility of injury is not sufficient to create the "position of peril," *imminent peril*, essential to the application of the humanitarian rule. State ex rel. Vulgamott v. Trimble, Court en Banc, 300 Mo. 92, 253 S.W. 1014; Concurring opinion of White, J., in Banks v. Morris & Co., supra; Ziegelmeier v. East St. Louis & Suburban Ry. Co., 330 Mo. 1013, 51 S.W. 2d 1027; Ridge v. Jones, supra; Frailey v. Kurn, Div. No. 2, 349 Mo. 434, 161 S.W. 2d 424; Blaser v. Coleman, Court en Banc, 358 Mo. 157, 213 S.W. 2d 420. The significance of the required *imminence* of peril (at a time after which defendant can avert a casualty) as essential to a claim based upon negligence under the humanitarian rule may not have always been fully appreciated by this court. In some cases the facts have been held to have justified submissions under the humanitarian rule when the evidence only justified a submission of primary negligence or of willful, wanton or reckless conduct, the reviewing courts (having momentarily overlooked the essentiality of the imminence of plaintiff's peril as a constitutive element of the humanitarian rule) stating that a plaintiff's position before a defendant acted was a "present existence" of a plaintiff's "perilous position," and then saying the failure of defendant to exercise ordinary care under the humanitarian rule "was equivalent to wilfulness, wantonness or recklessness." See, for example, Bobos v. Krey Packing Co., supra.

In the instant case, as said by the St. Louis Court of Appeals, plaintiff was in a precarious position, indeed one fraught with perilous possibilities, as he clung to the side of defendant's streetcar. But something would have to happen other than that which was then happening before injury would befall him. However, there was a reasonable probability plaintiff would be injured if the motorman accelerated and jerked the streetcar. Considered from a standpoint favorable to plaintiff, there was substantial evidence tending to show that plaintiff was injured by the act of defendant's motorman in accelerating and jerking the streetcar. Before the streetcar was accelerated and jerked there may indeed have been a possibility that plaintiff would be injured, but his peril was not then certain, immediate and impending. Plaintiff could not have been in a position of peril, that is, in immi-

nent peril, as contemplated by the humanitarian rule, until the motorman accelerated and jerked the streetcar. Blaser v. Coleman, supra.

Under the evidence introduced in the instant case a jury might have reasonably found the act of defendant's motorman was or was not (primary) negligence in the sense of the failure to exercise ordinary care in the circumstances; if defendant's [708] conduct was primary negligence, plaintiff-respondent does not contend that he, a trespasser, may recover. Or a jury might have reasonably found that the motorman's act or conduct amounted to willfulness, wantonness or recklessness. If a jury were to find that the act or conduct was willful, wanton or reckless, plaintiff, although a trespasser, could recover, if so pleaded and submitted. But if the evidence did not justify the submission of plaintiff's case under the humanitarian rule, even though the evidence did justify the submission of willful, wanton or reckless conduct, the submission of plaintiff's case under the humanitarian rule was erroneous because the jury may have found for plaintiff although the jury had the view that defendant's conduct amounted to no more than (primary) negligence upon which plaintiff, a trespasser, concedes he may not recover.

In the case of Nichols v. Bresnahan, 357 Mo. 1126, 212 S.W. 2d 570, this court pointed out that negligence is one kind of tort, an unintentional injury usually predicated upon failure to observe the prescribed standard of care (52 Am. Jur., Torts, § 20, pp. 373-374), while a willful, wanton, reckless act is another kind of tort, an intentional act often based upon an act done in utter disregard of the consequences (52 Am. Jur., Torts, §§ 22 and 23, pp. 376-377). Reckless conduct may involve and include negligence, but reckless conduct must contain a risk of harm to others in excess of that necessary to make the conduct unreasonable and, therefore, negligent (Restatement, Torts, § 500). See also Plant v. Thompson, 359 Mo. 391, 221 S.W. 2d 834; Agee v. Herring, 221 Mo. App. 1022, 298 S.W. 250.

As a general rule a street-railroad company or railroad company is bound only to abstain from willfully, wantonly or recklessly injuring a trespasser on its cars, or to exercise ordinary care to avoid injuring him after discovering his peril. 60 C. J., Street Railroads, § 278, pp. 376-377; 52 C. J., Railroads § 2177, pp. 628-629. These two duties are distinguishable, and, transposed upon our conception of a defendant's humanitarian duty, it seems to be recognized that a carrier is responsible for the willful, wanton or reckless injury of a trespasser on its cars; and is responsible for its negligence under the humanitarian rule. Frailey v. Kurn, supra; Stewart v. Missouri Pac. R. Co., 308 Mo. 383, 272 S.W. 694; also Hall v. Missouri Pac. R. Co., 219 Mo. 553, 118 S.W. 56; O'Donnell v. Kansas City, St. L. & C. R. Co., 197 Mo. 110, 95 S. W. 196; Youmans v. Wabash R. Co., 143 Mo. App. 393, 127 S.W. 595. While willful, wanton

and reckless conduct on the one hand, and negligence under the humanitarian rule on the other, are distinguishable, yet, with respect to a plaintiff's status as a trespasser or with respect to a plaintiff's contributory negligence and with respect to our tender regard for human life and limb, negligence under the humanitarian rule could well be said to be akin to willful, wanton or reckless conduct. Bobos v. Krey Packing Co., supra; Everett v. St. Louis & S.F.R.Co., 214 Mo. 54, 112 S.W. 486; Drogmund v. Met. St. Ry. Co., 122 Mo. App. 154, 98 S.W. 1091; Cole v. Metropolitan St. R. Co., 121 Mo. App. 605, 97 S.W. 555. See also Cox v. Terminal R. Ass'n. of St. Louis, 331 Mo. 910, 55 S.W. 2d 685.

But, whatever was the nature of defendant's conduct—negligence in a primary sense, or willful, wanton or reckless—as defined by law of negligence, if the defendant's conduct was antecedent to the time plaintiff was in imminent peril, and if the effect of defendant's conduct was immediate in causing plaintiff's injury, or if when plaintiff first was in imminent peril defendant did not thereafter have time to avert the casualty, there was no room for the application of the humanitarian rule. It was only when plaintiff was in a "position of peril," as the term is used in invoking the humanitarian rule, that is, when he was in "imminent peril," that the rule came into play, seized upon the situation, and required the defendant's motorman to act with the means at hand to avert the impending injury if he could do so (without injury to himself or others). See constitutive fact "(3)," Banks v. Morris & Co., supra; Blaser v. Coleman, supra; [709] Smith v. Siedhoff, Court en Banc, Mo. Sup., 209 S.W. 2d 233. Whether or not the defendant in this case was guilty of primary negligence or whether or not defendant was willful, wanton or reckless in accelerating or jerking the streetcar, the humanitarian rule seized upon the situation at the very moment plaintiff was in imminent peril, and defendant was responsible for his conduct under the humanitarian rule if thereafter defendant's operator could in the exercise of ordinary care have averted the injury. Since the evidence, considered from a standpoint favorable to plaintiff, tends to show that plaintiff was injured almost immediately after he was in imminent peril, the conclusions follow that the humanitarian rule was not applicable in plaintiff's case, and that the submission of plaintiff's case to the jury under the rule was erroneous.

The comparatively recent cases of Blaser v. Coleman, supra; and Smith v. Siedhoff, supra, have in effect overruled the doctrine of those cases, and we now expressly overrule the doctrine of those cases, wherein negligence under the humanitarian rule has been held to be submissible when supported by evidence tending to show that plaintiff was in a more or less dangerous position, but was not in "imminent

peril'' absent some wrongful act of the defendant, and wherein, although some wrongful act of defendant may have brought the plaintiff into imminent peril, there was insufficient time after plaintiff was in imminent peril for defendant to act with the means at hand to avert the casualty.

Although the submission of plaintiff's case upon negligence under the humanitarian rule was erroneous, yet, in the exercise of our discretion, we will remand the case to permit plaintiff, if he desires, to amend his petition to charge defendant's willful, wanton or reckless conduct. Woodson v. Metropolitan St. R. Co., 224 Mo. 685, 123 S.W. 820; Patzman v. Howey, 340 Mo. 11, 100 S.W. 2d 851, and cases therein cited. See also Blaser v. Coleman, supra. Plaintiff in the instant case has adopted a theory of recovery in the trial court and has consistently pursued a considered adherence to that theory, as did plaintiffs in the cases of Nichols v. Bresnahan, supra; and Cosentino v. Heffelfinger, 360 Mo. 535, 229 S.W. 2d 546. But it is apparent that the instant case is different from the Nichols and Cosentino cases in that in the instant case plaintiff's theory of a recovery based on humanitarian negligence may well have been the result of a study of the decisions of this court which heretofore may have been equivocal upon the question of the applicability of the humanitarian rule to claims supported by evidence like that introduced in the instant case, which evidence does not support the submission of a defendant's responsibility for negligence under the rule.

The judgment should be reversed and the cause remanded.

It is so ordered.

PER CURIAM:—The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the Court en Banc. All concur.