Timothy HENDERSON, et al.,
Plaintiffs-Appellants,

v.

TERMINAL RAILROAD ASSOCIATION OF ST. LOUIS, Defendant-Respondent.

No. 43233.

Missouri Court of Appeals,
Eastern District,
Division Two.

April 26, 1983.

Motion for Rehearing and/or Transfer Denied July 6, 1983.

Application to Transfer Denied Nov. 22, 1983.

Donald S. Singer, Clayton, for plaintiffs-appellants.

Ely & Newport, Robert C. Ely, St. Louis, for defendant-respondent.

SIMON, Judge.

Appellants, Timothy Henderson (Timothy), a minor, his father and next friend, James Henderson, and his mother, Magnolia Henderson, appeal from a post-trial order of the Circuit Court of the City of St. Louis. Appellants filed this action against respondent, Terminal Railroad Association of St. Louis (Terminal), alleging that Terminal's freight train traumatically amputated Timothy's left forefoot. Appellants' cause was submitted to the jury on two theories of negligence: (1) Section 339 Restatement of Torts 2d (1965 Revision), the attractive nuisance doctrine, and (2) the humanitarian doctrine. The jury found in favor of the appellants, awarding damages of $273,491. Subsequent to the verdict, the trial court sustained Terminal's motion for a judgment notwithstanding the verdict finding that appellants failed to make a submissible case under either theory and also sustained Terminal's motion for a new trial.

On appeal, appellants contend that the trial court erred in sustaining the motion for a judgment notwithstanding the verdict because the evidence adduced at trial supported: (1) submitting that Terminal negligently failed to follow the custom and practice of its industry to prevent Timothy's exposure to injury and that such negligence caused his injury (§ 339 Restatement of Torts 2d (1965 Revision)), and (2) submitting that Terminal's employees did or could have discovered Timothy in a position of immediate danger had they not breached their duty of lookout (humanitarian doctrine) and, additionally contend that the trial court erred in sustaining Terminal's motion for a new trial because use of the term "unguarded" in the attractive nuisance verdict directing instruction was merely descriptive and not an allegation of negligence. We affirm in part, and reverse in part.

Our initial determination shall be the submissibility of appellants' cause of action under either theory. In making this determination, the evidence and all its reasonable inferences shall be considered in the light most favorable to the appellants, and all contrary evidence will be disregarded. *Grant v. National Super Markets, Inc.,* 611 S.W.2d 357, 358[1] (Mo.App.1980).

Applying this standard, we find the facts to be as follows: On a clear afternoon, Timothy and Harold Mackintosh (Harold), following their release from school, took a shortcut through Penrose Park. Terminal's right of way bisects Penrose Park, a large recreational facility with picnic areas, baseball diamonds and a banked bicycle track. The right of way, consisting of two sets of railroad tracks, including crossover switching devices, is located on an east-west axis. There is a three percent uphill grade and a gradual curvature of the tracks in this area.

Two pedestrian footpaths in Penrose Park lead to Terminal's right of way. Fifty to sixty school children a day take a short-cut from Scullin School, which is south of the park, across Terminal's right of way in Penrose Park to reach their homes located in an area north of the park. Timothy attends Scullin School and his home is north of Penrose Park.

Terminal's train, consisting of two locomotives and forty eight fully loaded freight cars, was traveling westbound on the uphill grade of the right of way to the General Motors plant, at approximately two miles per hour. The train was equipped with air brakes which are operable from the two locomotives and the caboose in a service and emergency application.

Timothy was eleven years old at the time of the injury, but functioned mentally at a five to six year old level and was in a slow learner class at Scullin School. Timothy had been instructed about the danger of moving automobiles, but had not been instructed, either at home or at school, about the danger of moving trains.

J.T. Uelhof (Uelhof), Terminal's employee, was the rear man on the train, stationed on the caboose. It was his job to line up the crossover switches and to protect the rear end of the train.

Uelhof, standing on the caboose at the rear of the train, first observed Timothy and Harold running east, along the south side of the train, ten car lengths away (a minimum of five hundred feet). At trial, describing what he observed, Uelhof stated: "... I saw these two boys further up alongside of the train running alongside of the train, presumably to hop on and off, which they tried at various times." Uelhof estimated that he watched the boys for two minutes before he hopped off the train to line up the switches. During the switching maneuver he lost sight of the boys, but three or four minutes later saw them on the north side of the train, about five car lengths away, running west between the main lines. Uelhof testified that he thought they climbed through the train to reach the north side while the train was going through the crossover. Uelhof again lost sight of the boys while he did additional switching, which he estimated took a minute and . a half. After completing his switching tasks, Uelhof saw Harold running toward the caboose telling him that his friend, Timothy, was hurt.

As the train continued westbound, Uelhof saw Timothy sitting on the ground between the main lines. Timothy was holding his left leg; blood was visible on the bottom of his left foot.

At trial, Uelhof testified that he did nothing to warn the boys because "[t]hey were too far away." Further, Uelhof admitted that company rules provided that he was to warn children and get them off the train. He estimated that his walking speed was three to four miles per hour.

The caboose does not contain any communication equipment to the locomotive or otherwise. Uelhof remained on the train without offering emergency assistance. Two minutes later, Uelhof hopped off the train and called for assistance at a railroad phone box, and then immediately re-hopped the caboose. The train did not stop until it reached its destination, the General Motors plant.

At trial, Terminal's employees testified that they were familiar with children on the right of way in the Penrose Park area, especially when school was letting out and during summer vacation.

Locomotive engineers, testifying as expert witnesses for the appellants and Terminal, stated that they would stop the train immediately if they discovered children running alongside, hopping on and off the train.

Initially, we will consider whether appellants made a submissible case under § 339 Restatement of Torts 2d. Timothy's verdict directing instruction, a modification of MAI 22.01 (1977 Revision), essentially track-

ing § 339 Restatement of Torts 2d (1965 Revision),[1] is as follows:

> Your verdict must be for plaintiff Timothy Henderson if you believe:
>
> First, defendant maintained unguarded railroad tracks upon which freight trains proceeded, and
>
> Second, defendant's employees knew or had reason to know children would be exposed to them, and
>
> Third, defendant knew or should have known they presented an unreasonable risk of harm to children exposed to them, and
>
> Fourth, plaintiff Timothy Henderson, because of his youth and mental capacity did not appreciate the risk of harm associated with them, and
>
> Fifth, defendant's employees failed to prevent plaintiff Timothy Henderson from being exposed to such harm, and
>
> Sixth, defendant was thereby negligent, and
>
> Seventh, as a direct result of such negligence, plaintiff Timothy Henderson was injured,
>
> unless you believe that said plaintiff is not entitled to recover by reason of instruction number 4.

Our Supreme Court, in *Arbogast v. Terminal Railroad Ass'n of St. Louis,* 452 S.W.2d 81, 84[9] (Mo.1970), recommended the adoption of § 339 Restatement of Torts (First), a modification of the attractive nuisance doctrine. Later in *Glastris v. Union Electric Co.,* 542 S.W.2d 65, 68 (Mo.App. 1976) and in *Crawford v. Pacific Western Mobile Estates, Inc.,* 548 S.W.2d 216, 218–219[2] (Mo.App.1977), our courts analyzing the 1965 revision of § 339 Restatement of Torts (First), found that the revision did not produce any material changes.

■ The Restatement rule differs from the attractive nuisance doctrine, in that, the primary emphasis is to show the foreseeability of harm to the injured child and not that the injured child came onto the land because of the attractiveness of the condition. Still the elements of attraction are important to show the child's entry onto the land should have been anticipated. 65 C.J.S. Negligence § 63(89, 90), pp. 835–840.

■ Terminal argues in its post trial motion and on appeal that appellants failed to make a submissible case because the allegations and evidence did not fit within the framework of paragraph Fourth of appellants' verdict director, i.e., element (c) of § 339. Terminal reasons that a moving train is an open and obvious danger and, absent some distraction, a child hopping on and off the train is expected to realize that danger exists therein and, therefore, appellants failed to make a submissible case as a matter of law.

Almost ninety years ago, our Supreme Court in *Barney v. Hannibal & St.J.R. Co.,* 126 Mo. 372, 28 S.W. 1069, 1071[1] (Mo. 1894), affirming the grant of a new trial following a verdict in favor of a 5½ year old boy for injuries sustained in hopping on a moving train, held that the rule applicable in "turntable cases" (attractive nuisance doctrine) has no application to cases of this sort because railroad cars and similar machinery are not "dangerous machines" within the meaning of that rule.

---

1. All reference to § 339 shall be to the Restatement of Torts 2d (1965 Revision), unless otherwise noted.

Section 339 provides:

"A possessor of land is subject to liability for physical harm to children trespassing thereon caused by an artificial condition upon the land if

(a) the place where the condition exists is one upon which the possessor knows or has reason to know that children are likely to trespass and

(b) the condition is one of which the possessor knows or has reason to know and which he realizes or should realize will involve an unreasonable risk of death or serious bodily harm to such children and

(c) the children because of their youth do not discover the condition or realize the risk involved in intermeddling with it or in coming within the area made dangerous by it, and

(d) the utility to the possessor of maintaining the condition and the burden of eliminating the danger are slight as compared with the risk to children involved and

(e) the possessor fails to exercise reasonable care to eliminate the danger or otherwise to protect the children".

Our research indicates that our courts have not abandoned the *Barney* ruling. Further, the majority of our sister jurisdictions have adopted the same or similar rule. *See Holland v. Baltimore & O.R. Co.*, 431 A.2d 597 (D.C.App.1981); 35 A.L.R.3d 328; *Herrera v. Southern Pacific Ry. Co.*, 188 Cal.App.2d 441, 10 Cal.Rptr. 575 (Dist.Ct. App. 4th Dist.1961).

Although the *Barney* holding is directed to the attractive nuisance doctrine, the reasoning which supports the exemption of a moving train under the particular facts of the present case from the ambit of § 339, is found in Prosser, Law of Torts, 4th Edition, Ch. 10, § 59, pp. 371–372:

> One very important factor is that of whether any trespassing child may reasonably be expected to comprehend the situation. Sometimes this is expressed by saying that the danger must be latent, meaning apparently nothing more than that the child can be expected not to understand and appreciate the peril, or protect himself against it. The question here is not whether he does in fact understand, although that too has its importance; it is rather what the possessor may reasonably expect of him. Here the courts have displayed a tendency to set up certain more or less arbitrary categories of conditions which trespassing children, as a matter of law, can be expected to understand. This means that the possessor is free to rely upon the assumption that any child of sufficient age to be allowed at large by his parents, and so to be at all likely to trespass, will appreciate the danger and avoid it, or at least make his own intelligent and responsible choice. The danger to which such a fixed rule most often has been applied is that of drowning in water; but there are numerous cases showing a similar rigidity as to the perils of fire, falling from a height or into an excavation, moving vehicles, ordinary visible machinery in motion, sliding or caving soil, and piles of lumber, crossties, and other building material. *See*

*also:* 65 C.J.S. Negligence § 63(99) pp. 848–849.

Applying this rationale to the present case, we conclude that the appellants failed to make a submissible case of negligence under § 339 as a matter of law.

■ Next, we consider if appellants made a submissible case under the humanitarian doctrine. To do so, appellants must show by substantial evidence: (1) that Timothy was in a position of immediate danger; (2) that Terminal's employees were aware or should have been aware of Timothy's position of peril; (3) that after receiving such notice they had the present ability, with the means at hand, to have averted the impending injury without injury to themselves or others; (4) that Terminal failed to exercise the requisite care to avert such impending injury, and (5) by reason thereof, Timothy was injured. *Epple v. Western Auto Supply Co.*, 548 S.W.2d 535, 540[5] (Mo. banc 1977); *Wiseman v. Missouri Pacific Railroad Co.*, 575 S.W.2d 742, 745[1] (Mo.App.1978).

■ Considering the post trial motions, the trial court's order and the parties' briefs, the crucial issue is whether or not appellants adduced substantial evidence to satisfy the first humanitarian requirement, i.e., that Timothy was in a position of immediate danger.

On appeal, Terminal argues there is no evidence to support the humanitarian submission, in that, the evidence does not show when Timothy came into a position of immediate danger and, therefore, it is impossible to determine whether Terminal or its employees had notice of Timothy coming into that position of immediate danger and it would be impossible for the jury to find that, after receiving such notice, Terminal would have been able to avoid the impending injury.

The boundaries of a position of immediate danger are determined from the particular facts and circumstances, and the question of when and where Timothy came into a position of peril is for the jury.[2] In *Epple,* our Supreme Court stated:

---

**2.** The trial court in its memorandum and order    stated:

The first step in establishing liability under the humanitarian doctrine is demonstrating that the plaintiff came into a position of immediate danger. This position is commonly defined by the Missouri courts as that position of danger to the plaintiff, whether or not the plaintiff was negligent in getting there, in which by reason of the then existing circumstances, if unchanged, injury to the plaintiff is reasonably certain and not a mere possibility. The peril must actually be imminent and may not be merely remote, uncertain or contingent. *Clifton v. Crider,* 486 S.W.2d 274, 277 (Mo. banc 1972); *Yarrington v. Lininger, supra,* [327 S.W.2d 104] at 109. A bare possibility of injury is not sufficient to create a position of immediate danger. *McClanahan v. St. Louis Public Service Co.,* 363 Mo. 500, 251 S.W.2d 704, 707 (banc 1952). *Id.* at 540[6].

The evidence adduced at trial clearly establishes that for a significant period of time, Uelhof was aware of Timothy's presence and his involvement with the moving train. He observed Timothy running along the south side of the train, hopping on and off. Subsequently, he observed Timothy running along the north side of the train. Timothy could only reach the north side by climbing through, over or under the moving train. Obviously, Timothy was not taking a shortcut home but was actively involved in "playing" with a moving train.

We conclude that the totality of Timothy's actions constitute substantial evidence from which the jury could reasonably find, without engaging in speculation or conjecture, that Timothy was in a position of immediate danger. A situation more pregnant with danger is difficult to imagine. Timothy was clearly in a position of immediate danger, the circumstances of which, if unchanged, were reasonably certain to result in injury.

"[w]hether the plaintiff was in a position of immediate danger, observable by defendant, and which, if unchanged, was reasonably certain to result in injury to the plaintiff, is perhaps an extremely close question on the facts of this case. There is no evidence, of course, that plaintiff was 'observable' at all at the time he was injured, though he was a short time before."

Further, we conclude that substantial evidence is present in the record to satisfy the remaining elements of the humanitarian doctrine. As to the second requirement, it is not necessary that Timothy be observable at the moment of his injury. It is sufficient that he was observed or observable in a position of peril. *See Wiseman v. Missouri Pac. R. Co.,* 575 S.W.2d 742 (Mo.App.1978).

As to the third requirement, Uelhof had the present ability, with the means at hand, to have averted the injury to Timothy without injury to himself or others. The air brakes were operative from the caboose in both a service and emergency situation. Further, Uelhof made no attempt to warn the boys, reasoning that they were too far for a verbal warning but he made no attempt to warn by other methods, such as waving his arms, walking towards the boys, etc. He merely continued his tasks.

As to the fourth requirement, Terminal had actual notice of children habitually crossing the tracks. Therefore, Terminal had the duty to use ordinary care to maintain a lookout for the children upon the tracks. *Coonce v. Missouri Pacific Railroad Co.,* 358 S.W.2d 852, 854[3, 4] (Mo.1962).

In *Dutcher v. Wabash R. Co.,* 241 Mo. 137, 145 S.W. 63, 69 (Mo. banc 1912), our Supreme Court held this duty of ordinary care includes verbally warning the trespasser and, if necessary, stopping the train to save a life.

The means at hand, i.e., brakes and/or verbal or other type of warning, were available to prevent injury to Timothy. Uelhof testified that he had seen the boys hopping on and off the train. At the point he became aware of their involvement with the moving train and, in the exercise of ordinary care, he should have warned them and, if unable to do so, stopped the train to end the risk of injury to Timothy.

As to the fifth requirement, the record contains substantial evidence from which

the jury could reasonably find that Timothy was injured as a direct result of the Terminal employee's, Uelhof, failure to exercise the requisite care to avoid the injury to Timothy.

Appellants' second point is meritorious.

 Finally, appellants contend that the trial court erred in sustaining Terminal's motion for a new trial based upon the use of the term "unguarded" in the attractive nuisance verdict directing instructions.

Our resolution of the appellants' first point, i.e., no submissible case was made on the attractive nuisance theory, is also dispositive of this point. Appellants' case was submitted on a supported "humanitarian" theory and an unsupported "attractive nuisance" theory. Applicable to this situation is the committee's comment to MAI 1.02 (2nd) Conjunctive Submissions:

"... the jury should not be instructed on a theory of recovery or defense not supported by the evidence, and that any such submission, whether in the conjunctive or disjunctive, should be reversible error. A theory of recovery or defense should not be submitted unless it can stand alone." [3]

*Id.* at 7.

In *Hardy v. St. Louis-San Francisco Railway Co.,* 406 S.W.2d 653, 659[6] (Mo.1966), our Supreme Court remanded the cause for a new trial where plaintiff's cause of action was submitted under a primary negligence theory and a humanitarian theory where the evidence supported only the primary negligence submission.

Similarly, the case at bar was submitted on two theories of recovery, i.e., attractive nuisance and humanitarian.

We conclude that reversible error was committed in the submission of the unsupported attractive nuisance theory. Therefore, we shall not review appellants' point as to the use of the term "unguarded" in the attractive nuisance verdict directors because on retrial that problem should not reappear.

**3.** (This comment is also set forth in MAI-3rd).

Judgment reversed and the cause remanded in accordance with this opinion.

DOWD, P.J., and GEORGE F. GUNN, Jr., Special Judge, concur.