**Mark CARTER and Grace Carter,
Plaintiffs-Appellants,**

v.

**NORFOLK & WESTERN RAILWAY
and Edward Murry,
Defendants-Respondents.**

No. 48497.

Missouri Court of Appeals,
Eastern District,
Division Two.

March 18, 1986.

Motion for Rehearing and/or Transfer
Denied April 15, 1986.

Application to Transfer Denied
May 13, 1986.

Lewis Steven Goldblatt, St. Louis, for plaintiffs-appellants.

Albert E. Schoenbeck, St. Louis, for defendants-respondents.

STEPHAN, Chief Judge.

Plaintiffs, Mark Carter and his mother, as next friend and legal guardian responsible for his medical expenses, appeal from a judgment entered on a jury verdict in favor of defendants, Norfolk and Western Railway and the general manager of its western region, Edward Murry. We reverse and remand for a new trial on the ground that a withdrawal instruction was erroneously given which had a prejudicial effect on the plaintiffs' case.

On May 15, 1979, sixteen-year-old Mark Carter and three of his friends hopped a ride on Norfolk and Western's transfer train MO5B. When the train began to gain speed, Mark attempted to jump off. However, he slipped under the wheels of the train and suffered traumatic amputation of both legs in addition to other injuries. The train was involved in switching operations at the time of the accident. The train, composed of 124 railroad cars of various types, was approximately 6,150 feet long and was operated by two crewmen located in the locomotive. Mark and his friends boarded near the rear of the train. The train had no caboose, nor were there any other employees near the train at the time of the accident. Norfolk and Western did not use cabooses on trains involved in switching operations. At the time of the accident, the conductor and rear brakeman, who would ordinarily occupy a caboose, were travelling eastwardly on Interstate Highway 70 to meet the train at its destination, the Luther yards in St. Louis.

Norfolk and Western's switching area is located within a residential area of North St. Louis County and in close proximity to Airport School in Berkeley, Missouri, where the boys had been playing basketball before turning their attention to the train. The switching area was not fenced in or otherwise separated from the school or residences. Substantial evidence was received at trial that the railroad was aware that children regularly played on or near the trains and often hopped onto trains just as Mark and his friends had done. There was also compelling testimony from the man who was the conductor of the train that a manned caboose was the only practical means of watching for children climbing on and off a train of such length. There was also evidence that, had the children's activity been observed, the train could have been stopped or prevented from moving by the brake system in a caboose.

At the outset of the trial, a motion in limine was granted at defendants' behest excluding all evidence concerning "Any labor dispute or labor claim concerning cabooses not being used on Norfolk and Western trains." Although the matter of a labor dispute was avoided during the trial, evidence of the efficacy of crewmen in a caboose to observe trespassers and to take steps to avoid injuring them was received, as set out above. Nevertheless, at the conclusion of the trial, the court gave the following withdrawal instruction: "The matter of there not being a caboose on train MO5B is withdrawn from the case and you are not to consider such matter in arriving at your verdict."

Plaintiffs' verdict directors were based on defendants' primary negligence of failing to keep a careful lookout after they knew or should have known, prior to the

date of this accident, that children regularly were on and about the tracks. Plaintiffs also sought instructions on the doctrine of comparative fault, which the trial court refused, giving instead the standard contributory negligence instructions.[1] M.A.I. 32.-01.

On appeal, plaintiffs urge that the trial court erred (1) in withdrawing from the jury's consideration the absence of a caboose, (2) in refusing to give the tendered comparative fault instruction, and (3) in excluding evidence of custom and practice relating to railroad switching and transfer operations in the St. Louis area.

■ Where a railroad has notice that pedestrians regularly trespass on its right of way in a particular area, it has a duty to use ordinary care to maintain a lookout for them, under the public user exception. *Frye v. St. Louis, I.M. & S. Ry. Co.*, 200 Mo. 377, 98 S.W. 566, 573 (1906); *Counts v. Kansas City Southern Railway Company*, 340 S.W.2d 670, 674 (Mo.1960); *Henderson v. Terminal Railroad Association of St. Louis*, 659 S.W.2d 227, 232 (Mo.App. 1983). The rationale for the exception is that, though a railroad may be entitled to a clear track, it has no right to expect one where it has notice of public use. *Frye*, supra, at 573. The public user exception also applies to children who play on or about standing railroad cars. *Burnam v. Chicago Great Western R. Co.*, 340 Mo. 25, 100 S.W.2d 858, 866 (1936).

■ In the present case there was considerable evidence that Norfolk and Western had both actual and constructive notice of children playing on or about the tracks and railroad cars. Plaintiffs' Exhibit 54, admitted into evidence without objection, contains copies of letters sent by Norfolk and Western to the parents of children found on railroad property in the area between the Berkeley Yard and Luther Yard. The letters report instances where children were found climbing on rail cars, running across the top of rail cars, crawling under box cars, and crossing between a cut of cars during live switching operations. In addition, several employees of Norfolk and Western testified to the presence of children in this area. Brakeman Carl R. Smith stated it was common knowledge that children played around train equipment. Assistant trainmaster Robert E. Cleaton said he had seen children walking along the tracks, and had received complaints concerning children playing on trains. Richard J. Peery, conductor of the train involved here, testified that children climbed the ladders on stopped trains, and also hopped trains at the rear of Airport School. He stated he had complained to a supervisor about children hopping trains. Peery also related two specific incidents which he witnessed. On one occasion he observed ten children on a stopped train, which delayed the movement of the train. The other occasion was on May 15, 1979, shortly before Mark's accident. While Peery was waiting for the brakes to release during a coupling at Brown Road, two children got on the train. He asked them to get off because the train could move at any moment. They then crawled under the train and walked south on Brown Road. After the coupling was completed, Peery boarded the railroad's van and proceeded eastwardly on Interstate Highway 70, as noted above.

Gerald L. Orr, engineer of a train designated N. & W.1, testified that on May 15, 1979, his train was travelling in a westwardly direction on tracks a short distance south of the tracks occupied by MO5B. Before N. & W.1 reached Berkeley, Orr

1. The trial of this case commenced on October 31, 1983, and concluded on November 18, 1983. On November 22, 1983, the Supreme Court of Missouri handed down *Gustafson v. Benda*, 661 S.W.2d 11 (Mo. banc), in which the court supplanted the humanitarian doctrine and the concepts of last clear chance and contributory negligence with the doctrine of comparative fault, in accordance with the Uniform Comparative Fault Act. The opinion continues: "Except for the instant case and interim cases where the parties can mutually agree, comparative fault shall apply only in cases in which the trial begins after the date of the publication of this opinion in the advance sheets of the Southwestern Reporter." *Id.* at 15. The opinion was reported in the advance sheets on January 31, 1984.

observed three boys alight from the stopped MO5B and cross the tracks in front of his train. Other testimony included that of nearby residents who testified that children regularly hopped rides on trains in the area and that the railroad had been notified of such ongoing conduct.

The evidence of public use by children was more than sufficient to impose upon Norfolk and Western a duty of lookout under the facts of this case. *Wilson v. Missouri-Kansas-Texas Railroad Company,* 595 S.W.2d 41, 44–46 (Mo.App.1980). See also, *Burnam v. Chicago Great Western R. Co.,* 340 Mo. 25, 100 S.W.2d 858, 866 (1936) where, quoting with favor from an earlier case, the Court said:

> If children have been playing in, upon, and around the standing cars in a switchyard, so continuously and for such length of time that the employees of the railroad should have known of this user, then there is imposed upon the railroad the duty of keeping a reasonable lookout for such children.

As indicated by the foregoing from *Burnam,* a railroad's duty or lack thereof is not determined by the status of the plaintiff, but rather by the railroad's knowledge, actual or constructive, of the plaintiff's presence. In *Savage v. Chicago, R.I. & P. Ry. Co.,* 328 Mo. 44, 40 S.W.2d 628 (1931), the plaintiff was an employee of a railroad other than the defendant. Plaintiff and his fellow employees customarily walked across tracks used by defendant on their way to and from work at all hours of the night and day, and defendant was aware of this practice. Plaintiff was struck by one of defendant's locomotives which was being operated at night without a headlight. The court affirmed judgment for plaintiff, in spite of rejecting his claim that he was owed a duty of warning because he was an invitee. The court stated:

To reach this decision we do not think it is necessary to find that plaintiff was an invitee. As was said in *Ahnefeld v. Wabash Railway Co.,* 212 Mo. loc. cit. 300, 111 S.W. 95, 99: *"It is immaterial as to how you denominate the persons who use the track, whether it is said they were invited by the railway company* or whether it is said they were licensees, or whether it was a habit and custom to use the track, *or whether you denominate them as trespassers.* The controlling fact is whether there has been such use of the track as a passway or footpath by the public as to afford reasonable grounds to the operatives of the train upon such track to expect or anticipate the presence of persons so near the railroad track as to endanger them." Upon a showing of such use the court said: "Followed the just, fair, and reasonable rule that, under such circumstances, it would be the duty of the operatives to keep a lookout for the presence of such persons, and to use ordinary care and caution in avoiding any injury to them."

*Id.* 40 S.W.2d at 631 (Emphasis added).

▮ Furthermore, such duty of lookout in the public user context is not limited to what can be seen on the tracks ahead of the engine. The duty of lookout extends laterally, *Scott v. Terminal Railroad Association of St. Louis,* 291 S.W.2d 859, 862 (Mo.1956), and includes the area near the tracks. *Wilson,* supra, at 46. Implicit in the duty to maintain a lookout is the duty to employ reasonably available means to do so. In *Savage,* supra, at 632, the court said that "the duty to keep a lookout requires some one in a place to look, and, if too dark to see without it, some means with which to see."[2] So it was here. Cupola topped cabooses were available to the railroad; and, indeed, were used by it on its long trips for the purpose of maintaining a look-

---

**2.** Defendants urge the inapplicability of the *Henderson, Wilson,* and similar cases because they dealt with submissions under the humanitarian doctrine. We find the argument unpersuasive. Here, as in *Savage,* we are concerned not with what the railroad did or did not do after Mark's peril was or should have been discovered, but with the antecedent negligence involved in failing to keep a lookout while conducting switching operations in an area where children were known to play on and about the trains.

out. The railroad stopped using cabooses on trains such as MO5B during switching operations as a matter of its own convenience some years prior to this occurrence, thus abandoning the only practical method of maintaining a lookout on a train of such length. The withdrawal instruction effectively told the jury that the lack of a manned caboose could not be considered on the issue of whether the railroad maintained a careful lookout; the instruction left the jury with the necessary conclusion that the railroad could not be negligent for failing to do that which could not be done, i.e., maintain an adequate lookout rearward from the locomotive.

■ Defendants' withdrawal instruction is patterned after M.A.I. 34.02 but is governed by M.A.I. 34.01—Withdrawal Instructions—General Comment, which provides in pertinent part:

A withdrawal instruction is only to be given when during the course of the trial a false issue, improper evidence, or evidence of an abandoned issue has been injected....

. . . .

... Evidence, rather than an entire issue, may also properly be withdrawn by instruction. [C]are must be taken that such evidence does not also concern an issue still before the jury.

Defendants argue that the lack of a caboose was properly withdrawn from jury consideration because the "only issue properly before the jury was what the actual crew members could have seen." This is analogous to an argument by the railroad in *Savage*, supra, that it was responsible only for what the crew members could have seen at night with the headlight turned off. Here, the foundational issue was not simply whether a lookout was maintained but whether the railroad exercised reasonable care in providing the means to maintain a lookout throughout the length of the train, i.e., a manned caboose. The withdrawal instruction effectively removed that issue from the case.

We cannot give any weight to the fact that plaintiffs' verdict directors concluded with the standard contributory negligence "tail," M.A.I. 17.01. With the duty of lookout effectively excised, as it was here, there was no reason for the jury to consider the issue of contributory negligence. The giving of the withdrawal instruction constituted prejudicial error warranting a new trial.

■ Plaintiffs' second point is that they are entitled to a new trial under the doctrine of comparative fault because they "presented the issue" to the trial court, and it thereafter became the law of Missouri by reason of the Supreme Court's disposition of *Gustafson v. Benda,* 661 S.W.2d 11 (Mo. banc 1983).[3] In view of our disposition of this case, we need not discuss the point; the doctrine of comparative fault will apply upon re-trial. *Gustafson,* supra, at 15.

■ The final assignment of error focuses on the exclusion of evidence proffered by the plaintiffs concerning the customs and practices of other railroads involved in yard-to-yard transfer operations, as in-

**3.** In the argument portion of their brief on this point, plaintiffs state that this would be an appropriate case for submission to the jury under the doctrine of comparative fault, because "both Mark Carter and Norfolk & Western Railway Company were guilty of contributory fault in this tragic double amputation." In their brief, defendants seize upon this statement to argue that it constitutes a "binding judicial statement which bars any recovery by plaintiffs in the sense that it admits contributory negligence." Plaintiffs' reply brief makes it very clear that no such admission was intended, for the reason that, according to plaintiffs, contributory negligence is "conceptually and legally distinct from 'contributory fault' as used in Appellants' brief." Where, in a reply brief, an appellant makes such an explanation demonstrating that no admission was intended, it is not so taken by the appellate court. *Brown v. Alton R. Co.,* 236 Mo.App. 26, 151 S.W.2d 727, 738 (1941). Furthermore, in oral argument, defendants' counsel conceded that the statement could be understood as having been made simply "by way of argument." Counsel then added, "Well, I'm not urging it, but I think it's something you ought to consider." We have and conclude that the statement, though inartfully broad, is not a judicial admission.

volved here. Plaintiffs sought to present such evidence through a Mr. Marty Barton. He had been employed by the Terminal Railroad Association for sixteen years and was familiar with that railroad's practices. After objection was sustained to plaintiffs' counsel's question as to Barton's opinion whether it was safe to operate a 124 car-length train with only two crew members, counsel made an offer of proof to the effect that Terminal Railroad always conducted its yard-to-yard operations with a full crew of five men. The offer continued that when Terminal found it necessary to stop in areas where children were known to play, it was the practice to deploy security guards. The trial court rejected the offer, and we cannot say that the trial court abused its discretion in so doing, which is the standard of review of this issue. *Davis v. Gatewood*, 299 S.W.2d 504, 511 (Mo. 1957).

Barton's testimony leading up to the offer of proof when read together with the offer itself fails to persuade us that Barton's knowledge extended beyond the practices of Terminal Railroad or that such practices were generally followed in the railroad industry. See *Davis v. Gatewood*, supra, at 510 and *Shane v. Lowden*, 232 Mo.App. 360, 106 S.W.2d 956, 962 (1937), where it is said that, "Proofs of a custom cannot be said to be sufficient to submit that issue to the jury unless there is substantial evidence to show that what is claimed to be custom amounts to a definite, uniform, and known practice under certain definite and uniform circumstances." Similarly, *Broadview Leasing Company v. Cape Central Airways, Inc.*, 539 S.W.2d 553, 562–563 (Mo.App.1976). If testimony such as Mr. Barton's is offered upon re-trial, such deficiencies should be corrected.

Reversed and remanded.

SIMON, J., concurs.

CARL R. GAERTNER, J., dissents with separate opinion.

CARL R. GAERTNER, Judge, dissenting.

Although I agree with the determination by the majority regarding the impropriety of the withdrawal instruction, I am constrained to dissent from the remanding of this case for a new trial. Having found in favor of plaintiff on one of his alleged trial court errors, we must address the issue of submissibility before remanding the case. *Grippe v. Momtazee*, 696 S.W.2d 797, 799 (Mo. banc 1985).

The Missouri Supreme Court has never deviated from the rule that recovery may not be had against a railroad by a trespasser jumping on and off a moving train upon a theory of primary negligence. As stated in *McClanahan v. St. Louis Public Service Co.*, 363 Mo. 500, 251 S.W.2d 704, 708 (1952):

As a general rule a street-railroad company or railroad company is bound only to abstain from willfully, wantonly or recklessly injuring a trespasser on its car, or to exercise ordinary care to avoid injuring him after discovering his peril. 60 C.J., Street Railroads, § 278, pp. 376–377; 52 C.J., Railroads, § 2177, pp. 628–629, 75 C.J.S., Railroads, §§ 925–926. These two duties are distinguishable, and, transposed upon our conception of a defendant's humanitarian duty, it seems to be recognized that a carrier is responsible for the willful, wanton or reckless injury of a trespasser on its cars; and is responsible for its negligence under the humanitarian rule. *Frailey v. Kurn, supra; Stewart v. Missouri Pac. R. Co.*, 308 Mo. 383, 272 S.W. 694; also *Hall v. Missouri Pac. R. Co.*, 219 Mo. 553, 118 S.W. 56; *O'Donnell v. Kansas City, St. L. & C.R. Co.*, 197 Mo. 110, 95 S.W. 196; *Youmans v. Wabash R. Co.*, 143 Mo. App. 393, 127 S.W. 595.

In *Frailey v. Kurn*, 349 Mo. 434, 161 S.W.2d 424, 427 (1942), under facts quite similar to those of the instant case, the Supreme Court stated:

Plaintiff's invasion of defendants' rights in voluntarily hopping defendants' train and continuing to ride thereon and the

delict of any duty, if any delict there be, owed plaintiff by defendants arising from the operation of the train in the usual and ordinary conduct of defendants' business were, at best under this record, mutual faults, and, absent other factors depriving defendants of such defenses, the law does not cast the consequences upon defendants or authorize any apportionment thereof. Consult *Moore v. Lindell Ry. Co.,* 176 Mo. 528, 542–544, 75 S.W. 672, 676; Annotations, 41 A.L.R. 1379; L.R.A. 1918D, 1195.

No contention is made in this case that the plaintiff's injuries were the result of willful, wanton or reckless conduct on the part of the railroad. Nor is there any evidence which would bring this case within the humanitarian doctrine. As recognized in the majority opinion, the entire thrust of plaintiffs' case is predicated upon antecedent negligence, the inability of the defendant to meet its duty of keeping a lookout in order to discover the trespassing plaintiff.

None of the cases relied upon in the majority opinion involve injuries sustained while jumping on or off moving trains. Three of the cases so relied upon, *Henderson v. Terminal Railroad Association of St. Louis,* 659 S.W.2d 227 (Mo.App.1983), *Wilson v. Missouri-Kansas-Texas Railroad Company,* 595 S.W.2d 41 (Mo.App. 1980), and *Coonce v. Missouri Pacific Railroad Company,* 358 S.W.2d 852 (Mo. 1962), involve submissions under the humanitarian doctrine. In *Henderson,* this court held that because railroad employees could have seen the plaintiff approaching the train in a position of imminent peril in time to have stopped a slow moving train, a submissible case was made. In *Wilson,* the present ability of the train crew to see the intoxicated plaintiff, passed out on the tracks ahead of the train, in time to stop the train moving at a speed of two or three miles an hour, made a submissible case under the humanitarian doctrine. In *Coonce,* it was judicially admitted that a trespassing plaintiff was guilty of contributory negligence as a matter of law and the case was submitted under the humanitarian doctrine. A plaintiff's verdict was reversed because the evidence was insufficient to impose a duty upon the defendant to keep a lookout at the place of plaintiff's injury or to have avoided the injury after his peril was discovered.

The fourth case relied upon in the majority opinion, *Savage v. Chicago, R.I. and P. Railway Co.,* 328 Mo. 44, 40 S.W.2d 628 (1931) did not involve a trespassing plaintiff. Savage was not "hopping" on and off of a moving train, but rather was crossing the defendant's tracks in an area where he had a right to be and where the defendant had a duty to be on the lookout for employees of other railroads. Contributory negligence in this case was held to be a jury question only because the defendant's train was operated at night without a headlight or warning and could not be seen or heard by the plaintiff under the circumstances.

The majority opinion also refers to *Burnham v. Chicago Great Western R. Co.,* 340 Mo. 25, 100 S.W.2d 858 (1936). This case involved an injury to a 5 year old child playing under box cars which were started in motion. A verdict against the railroad was reversed because of error in the admission of evidence. The theory under which the case was submitted is not set forth in the opinion. However, the quoted allegations of the petition are couched in the terms of the humanitarian doctrine.

I agree the evidence concerning children playing about the tracks is sufficient to impose a duty upon the defendant to keep a lookout. However, I cannot ignore the effect of the plaintiff's own conduct. Plaintiff was a 16 year old above average student well aware of the hazards involved in hopping on and off of moving trains. In its motions for directed verdict the defendant asserted plaintiff's contributory negligence as a matter of law barred any recovery. On appeal defendant buttresses this argument with the admission in plaintiff's brief that "both Mark Carter and Norfolk & Western Railway Company were guilty of contributory fault...." I do not believe the issue of contributory negligence can be cavalierly written off by means of a footnote. Rather, the admission in plaintiff's brief constitutes a statement of the obvious and inescapable conclusion that plaintiff

was guilty of contributory negligence as a matter of law. Plaintiffs' purported explanation of the admission, that there is a conceptual difference between contributory fault and contributory negligence, may have some applicability to products liability cases involving the doctrine of strict liability in tort, but it misses the mark here. In the ordinary negligence case, the only distinction between contributory negligence and contributory fault is in the effect of such conduct, the former barring recovery entirely, the latter mitigating damages. Indeed, the principal thrust of plaintiffs' appeal is that they are being unfairly deprived of the benefit of the doctrine of comparative fault because their case was tried before that doctrine became the law of Missouri. Since the Supreme Court of Missouri established the effective date of this change in the law, this court is powerless to disregard its mandate. We are constitutionally constrained to follow the controlling decisions of the Missouri Supreme Court. Mo. Const. Art. V, § 2; *Estate of Seabaugh,* 654 S.W.2d 948, 957 (Mo.App. 1983).

Accordingly, I dissent.