Frederick KLAUS and Barbara Klaus,
Plaintiffs–Appellants,

v.

C. Joseph DEEN, M.D. and C. Joseph
Deen, M.D., P.C., Defendants–
Respondents.

No. 63352.

Missouri Court of Appeals,
Eastern District,
En Banc.

June 21, 1994.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 23, 1994.

Application to Transfer Denied
Oct. 25, 1994.

Richard L. Hughes, Mogab & Hughes, P.C., St. Louis, for appellants.

Gary E. Snodgrass, Donald L. O'Keefe, Rabbitt, Pitzer & Snodgrass, P.C., St. Louis, for respondents.

PUDLOWSKI, Judge.

The litigation leading to this appeal involves a medical malpractice action brought by appellants, Frederick Klaus (Patient) and his wife Barbara Klaus. The jury returned a verdict for the respondents, C. Joseph Deen, M.D. (Doctor) and C. Joseph Deen, M.D., P.C. On appeal, appellants argue the trial court erred in: (1) Excluding appellants' expert witness from the courtroom during the testimony of respondents' expert witness, and (2) giving a withdrawal instruction which withdrew from the jury's consideration the fact that Doctor did not order a CT scan prior to performing surgery. We reverse and remand.

Doctor is an ear, nose and throat specialist. On February 28, 1989, Doctor performed a sphenoethmoidectomy on the Patient. This surgical procedure involves entering the sinuses and removing diseased tissue. Doctor did not order a CT scan prior to performing the surgery. Appellants alleged that during the surgery Doctor pierced the Patient's cribriform plate with a surgical instrument. This plate is located between the sinuses and the brain. According to appellants, after piercing the plate Doctor penetrated into Patient's brain thereby destroying one of his olfactory nerves. Appellants further alleged that Patient required additional surgery and suffered a partial loss of smell, brain injury, dizziness and other complications. Patient's wife brought a derivative claim for loss of consortium. After a one week trial, the jury returned a verdict for the respondents. This appeal followed. Other facts will be recited as necessary and we first address appellants' second point on appeal.

Appellants argue the trial court prejudicially erred in giving respondents' withdrawal instruction which withdrew from the jury's consideration the fact that Doctor did not order a CT scan prior to performing the surgery. We agree.

We note initially that Rule 84.04(e) provides that "[i]f a point relates to the giving, refusal or modification of an instruction, such instruction shall be set forth in full in the argument portion of the brief." Appellants set forth the challenged withdrawal instruction in their statement of facts and the legal file. Although not in strict compliance with the applicable rule, this is not a case where the challenged instruction was not provided. Appellants' claim of error will be examined on the basis of the instruction set forth in appellants' statement of facts. *Harris v. Woolworth*, 824 S.W.2d 31, 34 (Mo.App. E.D.1991).

Withdrawal instructions should be given when there is evidence which might mislead the jury in its consideration of the case as pleaded and submitted. *Asbridge v. General Motors Corp.*, 797 S.W.2d 775, 780 (Mo.App.E.D.1990). Respondents contend that the jury would have been misled if they had been permitted to consider the failure of Doctor to order a CT scan. The withdrawal instruction was patterned after M.A.I. 34.02 [1978 Revision] and provided:

> The fact that Dr. Deen did not order CT scans prior to the sphenoethmoidectomy procedure is withdrawn from the case and you are not to consider such fact in arriving at your verdict.

The following dialogue occurred during the testimony of appellants' expert, Dr. Roger Rose, a Board Certified Otolaryngologist:

APPELLANTS' COUNSEL: If medicine doesn't seem to be working with a patient and you're considering sphenoethmoidectomy surgery, is there a test that is available to you as an ear, nose and throat surgeon

so that you can determine two things: first of all, whether the sinuses are in fact inflamed or infected, and second, a test that would be of benefit to you in connection with the subsequent surgery should the patient decide to go ahead?

DR. ROSE: Yes, absolutely. The test, the gold standard is the CAT scan, the CT scan. And it has been in use in our field since the late or the mid late '70s but certainly has come into its own in the early 1980's. And the CAT scan tells you a lot. First of all, it tells you if this patient is more dangerous to operate on than someone else. And it also can tell you whether one side is more dangerous to operate on than the other side. And you can't get that information in any other reasonable way.

The CAT scan can also tell you that what you thought might be sinus disease is not sinus disease, it may be just some simple blockage from large turbinens or air cells in the turbinens that can cause sinus-like symptoms.

It also tells you which sinuses are the most involved and whether there's any abnormal anatomy which makes this operation trickier in that person than someone else.

\*     \*     \*     \*     \*     \*

DR. ROSE: [demonstrating with a CT scan of a person not the Patient] But what we see in this one patient—this is not comparing two different patients, in one patient between the left side and the right side, the right side is significantly lower down than the left. So for example, if the surgeon started to operate on the left side and established that without knowing what the CAT scan showed as his level of where he couldn't go any further and used those same measurements on the opposite side, he would automatically go into the brain. This is what the CAT scan shows that nothing else shows in this area. *And that's why it is critically important before you do this surgery.* (emphasis added). That's all I wanted to show.

\*     \*     \*     \*     \*     \*

APPELLANTS' COUNSEL: Was a CAT scan done in this case by Dr. Deen?

DR. ROSE: A CAT scan was not done.

APPELLANTS' COUNSEL: And again, why is a CAT scan necessary before surgery?

DR. ROSE: Well the most important reason for doing CAT scan is to avoid trouble. Avoid trouble. The roof of the nose, as demonstrated in this CAT scan, is not necessarily the same on both sides. Some people it goes flatter across, that is, the cribriform plate and the roof of the sinus can go just flat across, and with other people it angles up at a steep angle. And it may be different on both sides. So those who have a steep angle, there's a lot more area that one can get into trouble.

You have to know whether or not the bone is defective or thinned out, whether there's some preexisting condition. And then, of course, I mean, those are the really important reasons to do it to prevent trouble. Then the other reason is, of course, to guide you as to what you should do, whether you should do one sinus, three sinuses, all the sinuses. And routine X rays just don't give you that information. It has been the state of the art for a long time, well before this surgery was done.

■ The appellants' expert concluded that in his opinion there was a failure to use the requisite medical skill this surgery requires and demands. In addition to alleging in their petition that Doctor pierced the cribriform plate, appellants also alleged six other acts or omissions of negligence, including the allegation that Doctor performed unnecessary surgery. Appellants only offered the following verdict director:

Your verdict must be for plaintiff Fred Klaus and against defendant C. Joseph Deen, M.D. and C. Joseph Deen, M.D., P.C. if you believe:

First, defendant C. Joseph Deen, M.D., while operating on plaintiff Fred Klaus' ethmoid sinus penetrated through Fred Klaus' cribriform plate and dura and into plaintiff Fred Klaus' brain with his surgical instrument, and

Second, defendant C. Joseph Deen, M.D. was thereby negligent, and

Third, as a direct result of such negligence plaintiff Fred Klaus sustained injuries.

According to respondents, because appellants failed to offer an instruction that Doctor was negligent for failure to order a CT scan prior to surgery, then the claim is abandoned and no longer remains an issue in the case for any purpose. We observe, however, there is a distinction between an abandoned issue and evidence which bears on an issue before the jury. If the evidence offered to support an abandoned issue is to be withdrawn from the jury's consideration, "care must be taken that such evidence does not also concern an issue still before the jury." M.A.I. 34.01 [1978 Revision]. "The trial court may not withdraw evidence if it concerns an issue still before the jury." *Elfrink v. Burlington Northern R.R. Co.*, 845 S.W.2d 607, 611 (Mo. App.E.D.1992) (citing *Earll v. Consolidated Alum. Corp.*, 714 S.W.2d 932, 937–38 (Mo. App.E.D.1986)).

In *Elfrink*, plaintiffs brought actions for injuries sustained after an automobile, in which they were passengers, collided with defendant's train at a railroad crossing. *Id.* at 609–10. Defendant tendered withdrawal instructions which, in part, sought to withdraw evidence of speed from the jury's consideration. *Id.* at 611. The case was not submitted to the jury on the ground that the collision was proximately caused by train speed but rather on the issues of whether a bell or whistle had been properly sounded or whether the crossing had been properly maintained. *Id.* This court held that train speed and automobile speed were relevant to, among other things, the driver's ability to keep a lookout and to react if he heard a whistle. *Id.* Because speed was relevant to issues before the jury this court affirmed the trial court's denial of defendant's withdrawal instructions. *Id.*

As in *Elfrink*, the evidence of Doctor's failure to order a CT scan was relevant to an issue before the jury, namely whether Doctor failed to meet the requisite standard of care in treating Patient. Dr. Rose testified that a CT scan was necessary before surgery "to avoid trouble." He asserted that the scan can tell you if one person is more dangerous to operate on than someone else and if one side of a patient's roof of the nose is more dangerous to operate on than the other. In a demonstration with a CT scan, Dr. Rose testified that if a surgeon operated on a person whose right sinus roof was significantly lower than the left side, the surgeon operated on the left side first, used these left side measurements on the right side, then the surgeon "would automatically go into the brain." According to Dr. Rose, the CT scan will show the difference in the two sides and this is why the scan is "critically important" before the surgery is performed. In response to a question regarding whether any test should be used prior to performing a sphenoethmoidectomy, Dr. Rose stated, "Yes, absolutely. The test, the gold standard is the CAT scan, the CT scan." The fact Doctor failed to order a CT scan prior to surgery was relevant to the issue of whether Doctor met the requisite standard of care and the jury would not have been misled by being permitted to consider this evidence.

■ Respondents also suggest that the trial court did not err in giving the withdrawal instruction because there was no causal connection between the absence of a CT scan and Patient's injury. Three elements must be established to make a prima facie case of medical malpractice: (1) proof that defendant's act or omission failed to meet the requisite standard of care; (2) proof that the act or omission was performed negligently; and (3) proof of a causal connection between the act or omission and the injury sustained by the plaintiff. *Tompkins v. Kusama*, 822 S.W.2d 463, 464 (Mo.App.E.D.1991). Dr. Rose testified that he did not know what a CT scan of Patient taken prior to surgery would have shown since none was taken. Nor did he know if the failure to use a CT scan caused or contributed to cause any of Patient's injuries.

■ The issue to be decided, however, is whether the trial court erred in withdrawing the evidence, not if appellants made a submissible case.[1] The fact that Dr. Rose could

1. It should be noted that appellants did present

sufficient evidence to establish a prima facie

not state whether Doctor's failure to order a CT scan caused or contributed to cause Patient's injuries does not render the evidence irrelevant. *See Elfrink,* 845 S.W.2d at 611; *Tobb v. Menorah Medical Center,* 825 S.W.2d 638, 640–41 (Mo.App.W.D.1992). As previously stated, Doctor's failure to order a CT scan was relevant to whether he met the requisite standard of care.

Respondents rely, in part, on *Harris v. Washington,* 654 S.W.2d 303 (Mo.App.E.D. 1983). In this case, plaintiff brought an action after being injured in an automobile accident. *Id.* at 304. Defendant sought to withdraw evidence regarding plaintiff's hospitalization which occurred approximately five months after the accident. *Id.* at 305– 06. Plaintiff's expert's testimony "firmly established that the accident was not the cause of plaintiff's hospitalization." *Id.* at 307. This court held that the evidence of the hospitalization should have been withdrawn from the jury. *Id.* We recognized, however, that this was not a case where the medical testimony was inconclusive, where the testimony indicated that the accident could have caused the hospitalization or where there was only a possibility of causation. *Id.* (citing *Immekus v. Quigg,* 406 S.W.2d 298 (Mo.App. Spr.D.1966)).

In the present case, Dr. Rose stated that he did not know what a CT scan of Patient taken prior to surgery would have shown. In *Harris,* plaintiff's expert positively testified that the accident was not the cause of plaintiff's hospitalization. Dr. Rose did not testify that failure to order a CT scan could not have caused or contributed to cause Patient's injuries. *Harris* is distinguishable from the case at hand. Dr. Rose's testimony regarding causation did not justify withdrawing from the jury the fact that Doctor did not order a CT scan prior to surgery.

■ Respondents further contend that even assuming the trial court erred, appellants were not prejudiced by giving the jury the withdrawal instruction. Rule 84.13(b) provides that in order for an appellate court to reverse a judgment the trial court error

against the appellant must materially affect the merits of the action.

In *Carter v. Norfolk & Western Ry.,* 708 S.W.2d 306 (Mo.App.E.D.1986), plaintiff, Mark Carter, slipped under train wheels and sustained injuries after he attempted to jump off a train. Plaintiffs' verdict directors were based on defendants' primary negligence of failure to keep a proper lookout after they knew or should have known, prior to the accident, children were regularly on and about the tracks. *Id.* at 307–08. The trial court gave a withdrawal instruction which effectively told the jury that the lack of a manned caboose could not be considered on the issue of whether the railroad maintained a careful lookout. *Id.* at 310. "Here, the foundational issue was not simply whether a lookout was maintained but whether the railroad exercised reasonable care in providing the means to maintain a lookout throughout the length of the train, i.e., a manned caboose." *Id.* This court held that giving the withdrawal instruction constituted prejudicial error warranting a new trial. *Id.*

Whether Doctor met the requisite standard of care constituted a foundational issue in this case. The fact that appellants made a submissible case without the evidence that Doctor failed to order a CT scan does not mandate a holding that appellants were not prejudiced. To establish a prima facie case appellants had to establish that Doctor failed to meet the requisite standard of care. Doctor's failure to order a CT scan prior to surgery is relevant to this issue. Accordingly, the withdrawal of this evidence prejudiced appellants and materially affected the merits of this action.

Appellants' first point on appeal regarding exclusion of appellants' expert witness is not likely to reoccur in a similar context upon retrial. We, therefore, decline to address this issue.

The trial court's judgment is reversed and the cause remanded for new trial.

case. The trial court denied respondents' motion for directed verdict at the close of appellants'

case.

GARY M. GAERTNER, C.J., concurs in both opinions.

SMITH and CRANDALL, JJ., concur in opinion of PUDLOWSKI, J., in separate opinion.

CRIST, J., concurs in result.

KAROHL, J., concurs in the opinions of PUDLOWSKI and CRANDALL, JJ.

REINHARD, CARL R. GAERTNER, GRIMM, CRANE, AHRENS and CRAHAN, JJ., concur in the opinion of PUDLOWSKI, J.

CRANDALL, Judge, concurring.

I concur in the opinion of Pudlowski, J. I would add that the trial court committed reversible error in excluding plaintiffs' expert witnesses from the courtroom during the testimony of defendants' expert witness.

At trial, by consent of the parties, defendants' expert witness, Dr. William Friedman, testified out of order during plaintiffs' case in chief. After Dr. Friedman testified regarding his qualifications, defendants requested that Dr. Roger Rose, one of plaintiffs' expert witnesses, be excluded from the courtroom. The trial court asked plaintiffs to present a justification of why Dr. Rose needed to stay in the courtroom. Plaintiffs argued, among other things, that Dr. Rose "should have an opportunity to hear the testimony of this witness [Dr. Friedman] which might be relevant in terms of formulating his opinions or responses." Defendants then stated "Dr. Rose is obviously sitting here listening in preparation for his testimony by listening to Dr. Friedman's testimony." The trial court granted defendants' motion to exclude the witness from the courtroom because it found it had discretion and plaintiffs failed to show prejudice. The court later restated its ruling and ordered that Dr. Wilfred Leach, another expert witness for plaintiffs, be excluded during Dr. Friedman's testimony. The court asserted that exclusion of witnesses is "absolutely within judicial discretion."

Section 490.065.3, RSMo (Cum.Supp.1993) provides:

The facts or data in a particular case upon which an expert bases an opinion or inference may be those *perceived* by or made known to him *at* or before *the* hearing and must be of a type reasonably relied upon by experts in the field in forming opinions or inferences upon the subject and must be otherwise reasonably reliable.

(emphasis added).[1]

The statute clearly authorizes expert witnesses to base their opinion upon facts or data perceived at trial. Obviously, that is not possible if the witness is excluded from the courtroom.

Plaintiffs' experts had no personal knowledge of the alleged negligence. They could only testify in their expert capacity and offer opinions. As such, plaintiffs had an absolute statutory right to have them present in the courtroom. It was not a matter of trial court discretion. The statute confers a procedural right and failure to comply with the statute is presumptively prejudicial.

For the foregoing reasons, I agree that the cause should be reversed and remanded.

SMITH, Judge, concurring.

I am in full concurrence with the opinion of Judge Pudlowski. I write only to express my disagreement with the unnecessary opinion of Judge Crandall. Neither the appellants nor Judge Crandall identify any prejudice to the plaintiffs from the court's action in excluding the *plaintiffs'* opinion doctors from the courtroom while *defendants'* opinion doctor was testifying out of turn. That is because there was no prejudice. We can only reverse for prejudicial error. Sec. 512.-160.2, RSMo 1986. Neither appellants nor Judge Crandall identify any "facts or data" in this case testified to by defendants' doctor upon which plaintiffs' doctors could have based their opinion. Defendants' doctor was not a treating doctor and was not a fact witness but an opinion witness just as plaintiffs' excluded experts were.

Had the trial progressed in its usual fashion the plaintiffs' experts would have testified

---

1. The first clause of § 490.065.3, which discusses the bases upon which experts may base their opinion, is virtually identical to Rule 703 of the Federal Rules of Evidence.

without the benefit of hearing defendants' expert. The action of the trial court placed plaintiffs' experts in exactly the same position they would have been in if defendants had not fortuitously needed to put their expert on the stand out of turn. The court's action did nothing to change the basis of the experts' testimony or the testimony itself. Plaintiffs' experts were allowed to testify just as they would have if the trial had progressed in the usual order. The precedential value of Judge Crandall's opinion, if any, is to alert defense counsel never to put their opinion expert on the stand out of turn or at least before plaintiff's opinion expert testifies. Establishment of that precedent, if it needs to be established, should await a case where it is necessary for the decision.